FALLS et al. v. CARRUTHERS et al.—103 S. W. (2d) 605.
SMITH et al. v. SMITH et al.

Western Section. May 14, 1936.

Petition for Certiorari denied by Supreme Court, February 13, 1937.

Canada & Russell and Cooper Turner, Jr., all of Memphis, for complainants.

C. P. J. Mooney, of Memphis, for defendants.

SENTER, J. Mrs. Vida V. Smith, wife of C. D. Smith, died in March, 1922, testate, and by her will nominated her husband, the executor and trustee. By the terms of the will a trust was created for certain property, leaving the revenue from this property to her daughter, Marie Smith, now Marie Smith Falls, for life, and at her death, $50,000 was to go to each of the bodily heirs of Marie Smith. The balance of the corpus of this trust estate was to be divided be-

tween the heirs of Mrs. Willie E. Carruthers, who are Elmore Carruthers, an adult, Alberta Carruthers and Ewing Carruthers, minors.

The Bank of Commerce & Trust Company was named successor trustee to Mr. C. D. Smith. Mr. Smith died December 13, 1933, after administering the estate and the trust for a period of about eleven years.

Thereafter the Bank of Commerce & Trust Company and Marie Smith Falls filed a suit in the chancery court against Mrs. Willie E. Carruthers and her children, and against the minor daughter of Marie Smith Falls, Marie Vandergriff Falls, requesting the resignation of the bank as successor trustee, said bank never having qualified as such trustee, and the appointment of the Union Planter's National Bank & Trust Company as successor trustee.

By way of an amended bill, an accounting of Mr. Smith's trusteeship up to the date of his death was sought. These bills also involved the appointment of a successor trustee to Mr. Smith under another trust instrument, but that trust instrument is not involved on this appeal, and need not be further adverted to.

Hon. C. P. J. Mooney was appointed guardian ad litem for the two minor children of Mrs. Carruthers, and filed an answer submitting their interests and rights on the protection of the court.

Subsequently Marie Smith Falls was declared non compos mentis by the probate court of Shelby county, and Mrs. Walter Lane Smith, Sr., was appointed guardian for her, and she filed an intervening petition in this suit and was allowed to intervene as a party complainant in the place and stead of Marie Smith Falls.

At the hearing the chancellor decreed the substitution of trustees prayed for and ordered a reference to take and state the accounts of Mr. Smith as trustee during the entire period of the trusteeship.

Subsequent thereto W. L. Smith and J. S. Cooper, executors and trustees under the will of C. D. Smith, and Union Planters National Bank & Trust Company, administrator, cum testamento annexo, and trustee under the will of C. D. Smith (in the place and stead of First National Bank, resigned executor and trustee), filed a bill against Mrs. Walter Lane Smith, Sr., guardian of Marie Smith Falls, against the children of Mrs. Willie E. Carruthers, against Marie Vandergriff Falls, the minor daughter of Marie Smith Falls, and against all of the parties interested in any way under the will of C. D. Smith, the will of Vida V. Smith, and under a certain trust agreement between Marie Smith Falls and C. D. Smith.

This bill sought certain relief and declarations of rights, among which was the consolidation of this suit with the suit formerly filed seeking the substitution of trustees, and also that the administration of the Smith estate be taken over by the court, and for general relief.

Mr. Mooney was again appointed guardian ad litem for the minor defendants, Alberta and Ewing Carruthers, and he again submitted their interests to the protection of the court.

The questions made on this appeal grow out of exceptions to the master's report on an order of reference for an accounting by the C. D. Smith estate previously ordered. The master under the order of reference, after taking proof, among other things reported that the estate of C. D. Smith was not liable to the trust set up by the will of Vida V. Smith in any shape or form, and was not liable for certain losses resulting from the reinvestments made by C. D. Smith of the funds in his hands as trustee, said losses amounting to approximately the sum of $12,311.80, such losses resulting in the main from the reinvestment by said trustee of the trust funds in certain corporate stocks purchased by Mr. Smith for the trust account, and which he had sold at a price less than that which he had paid for same.

The master further held and reported that C. D. Smith was not liable for a probable loss of $3,500, resulting from investments made in corporation stocks, but which stocks had not been sold by him at the time of his death.

The guardian ad litem for the two minor wards excepted to this part of the master's report and his exceptions were overruled by the master, and on appeal to the chancellor the exceptions were overruled and the report of the master confirmed. It is from this action of the court that the guardian ad litem for said two wards has appealed to this court.

There is very little conflict in the evidence. It is conceded by appellee that the losses resulting from the investments made by C. D. Smith of the trust funds in the stock referred to, amounted to the sum of $12,311.80, and that there would be a probable loss of about $3,500 resulting from the investments in stocks purchased by Smith and which he had not sold at the time of his death.

It is disclosed by the record that at the time of her death in 1922, the estate of Mrs. Smith consisted of property valued at $89,698.08, of which $34,695 was represented by corporate stocks, and $8,716.35 was represented by bonds, that is, secured investments, and that after paying all administration expenses and bequests, the total corpus amounted to $65,176.27; that these figures represent the value of the estate when Mr. Smith took the same over. It was also shown that the value of this estate increased by the sale of corporate stocks and other conditions in a two years' period after the same went into the hands of C. D. Smith as trustee to the approximate amount of $200,000. and that one-half of this estate constituted a trust fund, amounting to $96,351.02.

Mr. Smith never made any charge for trustee's fees or commissions of any compensation for his services as trustee.

Appellant concedes that Mr. Smith was regarded as an excellent business man and had accumulated a large estate for himself and that he was regarded as a man well informed in the matter of making

investments. It is further conceded by appellant that Mr. Smith in making the investments which he made acted in the utmost good faith, and his integrity of motive is not challenged. The only question made by appellant on this appeal is that the investments made of this trust fund by Mr. Smith resulting in losses were not such investments as are authorized by law for the investment of trust funds, and that Mr. Smith, as the trustee, was not authorized to invest the trust funds except as provided by statute then in force in the state of Tennessee, and that because of his failure to invest the trust funds in such property as is recognized and authorized by the statutes then in force, that he became personally liable for said losses.

The pertinent parts of the will of Mrs. Vida V. Smith creating the trust and appointing her husband trustee is contained in items 5 and 6 as follows:

"Item Five.

"I hereby give, devise, and bequeath to my beloved husband, Charles D. Smith, as Trustee. all of the rest, residue and remainder of my estate, to be held by him for the following uses, purposes and trusts, to wit:

"It is my will and desire that that portion of my estate so devised to my said husband as trustee, shall be for the use and benefit of my beloved daughter, Marie V. Smith. That the said estate so devised shall be managed and controlled by my said husband as trustee, and that the revenue derived therefrom, shall be paid by my said trustee to my said daughter, Marie V. Smith, as long as she lives, said payments to be made to her every six months and at the death of my said daughter, Marie V. Smith, if she leaves an heir or heirs of her body living at the time of her death, then my said Trustee shall pay to each of the heirs of my said daughter, Marie V. Smith the sum of Fifty Thousand Dollars ($50,000.00), and all of the rest, residue and remaider of said trust fund, after the payment as above provided to the heirs of Marie V. Smith, shall be paid to the heirs of my sister, Willie E. Carruthers, share and share alike, and if my said daughter, Marie V. Smith should die without heirs of her body living at the time of her death, then the trust fund hereby created shall be paid to the heirs of my sister Willie E. Carruthers.

"Item Six.

"I hereby make, constitute and appoint my beloved husband, Charles D. Smith, executor of this my last will and testament, and also constitute him testamentary trustee of my estate as above provided, and do hereby waive the giving of any bond by him for the faithful execution of the provisions of this will by him as such executor or trustee, having full confidence in his integrity and honesty, and I further direct that my said executor and trustee be relieved from filing any inventory and reporting to any Court his action herein, except only and in so far as the law requires an in-

ventory for the purpose of determining the amount of the inheritance tax, which may be due upon my estate to any State, or the Federal Government. And I further hereby vest my said executor and trustee with full and plenary power to manage my estate, giving him full power and authority to sell any or all of my stocks, bonds, personal property and Real Estate, whenever in his judgment he thinks it advantageous to my Estate to so do. This power of sale shall not apply to the specific bequest of my jewelry and silverware. And he shall have the full power and authority as such Trustee, to make the sale of any part of the property hereby devised to him as Trustee for my daughter, and he shall have the right to make such reinvestments as he may see fit, looking always to the safety of the investment, rather than to a high rate of interest, and the purchaser or purchasers of my securities, or the Real Estate, shall not be charged with any duty to look to the application of the proceeds.''

By item 7 the will directed that in the event of the death of Mr. Smith before the estate was finally administered and distributed, the Bank of Commerce & Trust Company, a banking corporation of Memphis, was appointed as the executor and trustee in his lieu and stead, with the further provision: ''Hereby vesting the said Bank of Commerce and Trust Company with all of the power hereby specifically vested in my said husband as executor and trustee.''

Subsequently Marie V. Smith married John F. Falls. To that marriage was born Marie Vandergriff Falls, who is now about nine years of age. In July, 1933, Marie Smith Falls was adjudicated non compos mentis by the probate court of Shelby county. Mrs. Willie E. Carruthers has three children, respectively Elmore, Alberta, and Ewing Carruthers. The last two, Alberta and Ewing, being the wards of appellant. Marie Smith Falls is not married to John F. Falls at this time.

While it is not especially material to the questions involved on this appeal we may state that the record discloses that the assets of the estate of Mrs. Vida V. Smith were liquidated and the trust set up, it amounting to about $96,351.02. When the Union Planters National Bank & Trust Company succeeded Mr. Smith as trustee, pursuant to the order of court, there were turned over to the new trustee assets to the value of $68,972. The assets of the estate, however, were probably worth more than the exhibit shows, since the trustee has given a number of shares of stock the book value of $1, and has also fixed the same valuation for some defaulted mortgage bonds, and to these assets should also be added about the sum of $8,063, which represented a distribution to the beneficiary Marie Smith Falls in excess of income.

According to other evidence in the record the estate is probably of greater value on the basis of appraisal. During Mr. Smith's

tenure as trustee he purchased for the benefit of the trust, with funds thereof, various common and preferred stocks of corporations. In the main these stocks were bought about 1929, some having been purchased in 1930 or 1931. Owing to the general depression which began about 1930, and which has continued since that date, some of these stocks and bonds suffered a considerable decline in value, resulting in the losses to the estate above referred to.

It is insisted by appellant that the trustee was not authorized either by law or by the terms of the will to invest the trust funds in his hands in the class of stocks and bonds which he purchased, and that the losses sustained by reason of these investments are properly chargeable to C. D. Smith or to his estate.

As above stated, the appellant, representing his two wards, excepted to the holding and report of the master to the effect that C. D. Smith, or his estate, was not liable for the losses, and the Chancellor, on appeal, overruled and disallowed the exceptions and confirmed the master's report.

While the assignments of error are numerous, they present the question alone that the investments made by Mr. Smith as trustee of the trust fund were illegal and unauthorized by law, and that because of the character of the investments so made and the losses resulting therefrom, that the estate of C. D. Smith was liable to the trust estate of Mrs. Vida V. Smith for such losses.

It is the contention of appellant that these questions do not call for the application of the rule applicable to a joint finding of facts by the master and the chancellor, since the questions involved are questions of law governing the construction of the will, and the authority conferred by the testatrix on the trustee with reference to making investments. To this contention we agree, and will dispose of the assignments of error as presenting questions of law. Love v. Nashville A. & N. Institute, 6 Tenn. App., 104; Dale v. Hartman, 157 Tenn., 60, 6 S. W. (2d), 319; Fowler v. Stone's River Bank (Tenn. Ch. App.), 57 S. W., 209.

Where the facts are undisputed, the court will review such findings as being conclusions of law from given facts. Sutton v. Sutton (Tenn. Ch. App.), 58 S. W., 891.

We also agree that where a trustee disobeys instructions in the trust instrument the trustee is guilty of a conversion and is liable to the estate. State, to Use of Lyell v. Hammond, 2 Lea, 378; Wynne v. Warren, 2 Heisk., 118.

The general rule is that the duty which devolves upon a trustee is that he act in good faith in dealing with the trust funds, and with such degree of care as a prudent business man would exercise in the management of his own affairs, and not to act contrary to the authority given him by the trust instrument and the law.

As above stated, it is conceded that Mr. Smith acted in good faith in investing the trust funds, and his good faith is not questioned by appellant.

We do not find that the Tennessee cases deal specifically with the exact question made on this appeal, although we have numerous decisions in this state which have an indirect bearing.

In the case of State, to Use of Lyell v. Hammond, supra, the facts showed that John Randolph, the testator, died, and by his will he directed his executor to invest certain funds in a plantation for the use of the widow during her life, and further directed that at her death that it be sold, and one-half of the proceeds should go to the heirs of the testator's sister, and the other one-half should be at the disposal of the testator's wife, and in the event the wife died without making a will, then the entire estate should go to the heirs of the sister and to the testator's niece. The bill was filed by the heirs of the sister against the executor and against the testator's widow and against the sureties on their bonds for the conversion of the funds.

It appeared that the executor had purchased a home for the widow, taking title in the widow's name, rather than in her name as trustee, and that in the deed no declaration of the trust was made. The proof showed, however, that it was the intention of the executor and the widow that this property was bought in accordance with the terms of the will, and that they did not intend to deny the trust. In discussing and disposing of the case, the court said:

"A trustee in a case like the present, is held to perfect good faith, and the exercise of such reasonable care in the execution of his trust, as would be given by a prudent man in his own business, and is responsible for negligence creating loss, or for want of good faith producing injury, and will be held to repair and make good the loss or injury, in case of failure to perform the duties required of him, according to the above rule."

In the case of Dietz v. Mitchell, 12 Heisk., 676, 679, it was said:

"It is difficult, if not impossible to lay down any general rule as to the amount or character of care and diligence which must characterize the conduct of trustees in the discharge of their duties in order to avoid responsibility.

"Good faith is an essential element in the conduct of a trustee, but whenever this is clearly made out, a court of chancery will examine with indulgence and liberality the surrounding circumstances, to ascertain whether any alleged losses have been the result of culpable negligence.

"As well remarked by Lord Hardwicke, 'Where trustees act bona fide, and with due diligence, they have always received the protection of courts of equity,' and we doubt whether any better or safer rule than this can be laid down."

To the same effect is the case of Wynne v. Warren, 2 Heisk., 118, 125, wherein the court stated:

"It is a familiar remark of Lord Hardwicke, that 'the doctrines of the law which govern trustees should not be laid down with a strictness to strike terror into mankind acting for the benefit of others, and not for their own; and that as a trust is an office necessary in the concerns between man and man, and which, if faithfully discharged, is attended by no small degree of trouble and anxiety. it is an act of great kindness to accept it.' "

In the same case it was further said:

"Trustees must not venture to apply the trust money in a manner not authorized by the trust."

Appellant quotes and relies strongly on the case of Wynne v. Warren, for the general rule which he contends obtains in Tennessee to the effect that trustees must, at all events, unless specifically authorized otherwise by the will, take real security for their investments.

While there is some language in the Wynne v. Warren Case that would apparently support the contention of appellant, yet we think the language so used, when considered in the light of the facts of that case and the holding of the court, that such language is dicta.

In that case the trustees had been directed by the court to sell a male slave and invest the proceeds of the sale in a female slave. The trustees sold the male slave as ordered, but for certain reasons and conditions existing at the time, did not deem it practical to carry out the further order of the court to invest the funds derived from the sale of the male slave in the purchase of a female slave, and acting upon their own discretion and without reagrd for the orders of the court directing the reinvestment, loaned the money at interest without any security.

The court held that the trustees were liable for the money so loaned, the borrower having become insolvent. However, this holding was clearly predicated upon the theory that the fault of the trustees consisted in that they had actually disobeyed the order of the court and had invested the money in a manner contrary to the orders of the court without seeking the permission of the court to modify the order.

The Tennessee statutes on the subject during the time of the existence of the trusteeship of Mr. Smith were sections 4281 and 5434 of Shannon's Code, and chapter 9 of the Public Acts of 1925, and chapter 100 of the Public Acts of 1931, which took effect July 2, 1931.

Sections 4281 and 5434 of Shannon's Code appear to be identical and provide as follows:

"Guardians, executors, administrators, and trustees shall also be authorized and empowered to invest money and funds in their hands

in the public stocks or bonds of the United States, and make report thereof to the county court of the county where such guardian, executor, administrator, or trustee resides, unless another mode of investment is required by will or deed of the testator or other person who has established the funds.''

By chapter 9 of the Public Acts of 1925, being section 4281a4 of Shannon's Code (Supplement 1926), it is provided:

''Farm loan bonds issued under the provisions of the act of congress known as the 'Federal Farm Loan Act' shall be a lawful investment for all fiduciary and trust funds, and may be accepted as security for all public deposits.''

By section 1, chapter 19 of the Public Acts of 1865, being section 5433 of Shannon's Code, it is provided:

''The courts of law and equity in this state are hereby authorized to have the money and funds in the hands of clerks and receivers, or trustees, in litigation or under the control of said courts, invested in the public stocks or bonds of the United States, under such rules and orders in each case as may be legal and just.''

By chapter 100 of the Public Acts of 1931, it is provided in the enacting clause:

''Be it enacted by the General Assembly of the State of Tennessee, That all trustees, guardians and other fiduciaries in this State, unless prohibited, or another mode of investment is prescribed, by the will or deed of the testator or other person establishing the trust, may invest all funds in their hands in the following securities.''

There is then set out in the act the character of securities, but it is to be observed that the Legislature used the words ''may invest.''

We are inclined to the conclusion that these acts are not mandatory, but are intended to authorize by specific reference thereto the investment of the trust funds in certain property or securities listed or named, and therefore permissive rather than mandatory requirements.

It is to be noted that in each of these acts it is said that the trustee ''is authorized'' and ''may invest.'' In neither of these acts is it stated that the trustee ''must'' so invest. However this may be, we cannot escape the conclusion that Mrs. Smith left the matter of the investment of the trust funds entirely in the hands of and to the discretion of her husband. We cannot read into the will any specific limitation upon his authority in the matter of the control and investment of the trust funds.

We again quote from item 6 of the will:

''I hereby make, constitute, and appoint my beloved husband, Charles D. Smith, executor of this my last will and testament and also constitute him testamentary trustee of my estate as above provided. . . . and I further hereby vest my said executor and trustee with full and plenary power to manage my estate, giving him

full power and authority to sell any and all of my stocks, bonds, personal property, and real estate, whenever ·in his judgment he thinks it advantageous to my estate so to do. . . . and he shall have the full power and authority as such trustee to make the sale of any part of the property hereby devised to him as trustee for my daughter, and he shall have the right to make such reinvestments as he may see fit, looking always to the safety of the investment rather than to a high rate of interest. . . .''

It will thus be seen that there is no limitation upon his authority. There are certain words of cautioning, however, which are purely advisory or precatory, ''looking always to the safety of the investment rather than to a high rate of interest.''

Appellee has cited numerous cases from other jurisdictions construing similar provisions in a will. Beginning with the rule in 65 C. J., page 800, as follows:

''Statutes which enumerate the investments which trustees may make are to be construed as permissive, intended to provide for situations where the instrument creating the · trust does not otherwise provide, and do not prohibit other investments which may be authorized by the trust instrument. Such statutes operate only, except under very extraordinary circumstances, to protect the trustee, no matter how the investment results, and all investments other than those named in the statute must be justified under the rules applicable to investments made by trustees upon their own judgment.''

In the case of Willis v. Braucher, 79 Ohio St. 290, reported in 87 N. E., 185, 186, 44 L. R. A. (N. S.), 873, 16 Ann. Cas., 66, the will provided, after establishing the trust, as to powers of investment granted to the trustees ''and reinvest the proceeds arising from any such sales in such manner as she or they may think best, to dispose of any property real or personal so acquired and reinvest the proceeds in the same manner.''

In that case the court said:

''It is contended in support of the judgment of the Circuit Court: That the administrator had no legal authority to invest the fund in bank stock because it is the duty of the trustee to invest in accordance with the provisions of the statute, where the instrument creating the trust does not otherwise specify or direct, that this will does not otherwise specify or direct, and therefore the administrator was bound to follow the statute which does not permit, but in effect forbids, the investment of trust funds as in the present case in bank stock. . . . It is perhaps enough to say of this statute ·that it is permissive. It provides for situations where the instrument constituting the trust does not otherwise provide. Undoubtedly it indicates a general policy; a policy of carefulness in the handling of trust funds; it points out a course free from risk, and affords a cer-

tain sure method by which the trustee may secure an affirmation of the legality of his investment in advance. So that, as a matter of prudence, resort to the methods indicated may be strongly commended; but the statute does not afford any special aid in determining the question involved in the case at bar, unless it be ascertained that the will gives no added authority to the trustee. . . . By the clause quoted the trust reposed is most liberal. It gives to the trustee and to her successors in trust the title to all the testator's property, with authority 'to sell at private sale or otherwise all or any part of my personal estate in such manner and upon such terms as may be deemed best, and deliver for any or all real estate sold deeds,' 'and reinvest the proceeds arising from any such sales in such manner as she or they may think best,' and further 'to dispose of any property, real or personal, so acquired and reinvest the proceeds in the same manner.' We cannot conceive that this language imports a purpose to limit the power of the trustee to the ordinary powers incident to such trusts, or to confine his conduct as to investments within the narrow compass of the statute. On the contrary, it lodges with the trustee the most ample authority not only to sell the property in such manner as his judgment should dictate, but to invest and reinvest the proceeds in any manner to such trustee deemed best. Can it be possible that the testator intended or expected that the trustee would be governed by any statute inconsistent with the expressed purpose of the will? We think not. Had that been the intent no provision such as is found would have been necessary. By other clauses of the will it was made his duty to pay the proceeds by way of earnings of the funds to named beneficiaries, and the whole will imports a duty to keep the funds invested in such manner as that income would be derived therefrom. We do not agree with the proposition that in order to authorize a trustee to invest trust funds otherwise than in accordance with the statute the instrument creating the trust must specify the particular securities to be purchased. It is sufficient if the instrument designates the test to be applied. In the present case the will does so designate by providing that investments may be made in such manner as the trustee may think best.''

Another case very much in point is the case of Fox v. Harris, 141 Md., 495, 119 A., 256, 257, 26 A. L. R., 806. In that case the language of the trust instrument was:

"They shall have full power to sell or dispose of all my property, real, personal and mixed, and to invest and reinvest the proceeds arising therefrom in good, safe securities."

The trustee invested in certain railroad stock, and in certain railroad bonds. These investments were attacked as being illegal. The court in passing upon the question whether the trustees were empowered to buy these particular stocks and bonds quoted from the

opinion of the Maryland court in McCoy v. Horwitz, 62 Md., 183, as follows:.

"Unless there be some rule of law operative in Maryland to fetter her discretion, notwithstanding its honest exercise, and make that honest act a breach of trust, the decree of the court below dismissing the bill must be sustained. The general rule applying to discretionary trusts is that, if trustees exercise discretionary powers conferred on them in good faith and without fraud or collusion, courts of equity will not undertake to control their discretion. Perry on Trusts, sections 510 and 511."

In the same case the court further said:

"The contention of appellant in the present case is that, if an intention on the part of the testator to give the executors discretionary powers in making investments can be read into the will, such discretion is limited by the use of the words 'good, safe securities,' and she argues that these words imply practically such securities as are included in the trust list of the supreme bench of Baltimore city. And on this theory she offers two witnesses. . . .

"These witnesses said they did not think any investment in stock of a corporation could be classed as a good, safe investment as the value of stock depended upon the prosperity or lack of success of the corporation. . . .

"It further appears that their [trustees] services to the estate were without commissions or compensation of any kind. Indeed, it is freely conceded by appellant that the trustees acted with the utmost good faith and disinterestedness. We are not impressed by the contention of appellant that stocks are not securities within the meaning of the language used by the testator. . . .

"Nor do we agree with appellant's contention that the use of the words 'good, safe securities' limited the trustees to such investments as are authorized by the trust investment list of the supreme bench of Baltimore city, or, indeed that these words had any special significance. The authority to invest and reinvest for the purposes of a trust, without the use of such words, implies a direction to invest in safe securities, and the discretion is no more limited in one case than in the other."

To the same effect is the holding by the Supreme Court of Illinois in the case of Merchants Loan & Trust Company v. Northern Trust Co., 250 Ill., 86, 95 N. E., 59, 60, 45 L. R. A. (N. S.), 411, where a similar clause in a will to that of Mrs. Smith was involved. The clause in that will read:

"I give and devise full powers of management and control of the respective trust funds or estates, to invest and reinvest the same, and to vary the securities and property in which, from time to time, such trust funds or estates may be invested, and to let and devise any lands and tenements at their discretion, respectively. . . .

It is my will and I direct that investments be made with reference to the security of the trust fund rather than the rate of interest or income to be derived from it.''

The court in the opinion said:

''Where the will gives authority to the trustees to convert realty into personalty or personalty into realty, or invest and reinvest, in their discretion, the trustees may purchase such securities as a prudent and provident person would purchase as good and safe investments, and they are not restricted to the conditions and limitations imposed by law for the investment of trust funds.''

To the same effect is the case of Lawton v. Lawton, 35 App. Div., 389, 54 N. Y. S., 760, where a similar provision in a will was involved, and other New York cases cited and relied upon.

We also refer to the Annotations concerning this question found in 12 A. L. R., 574, 26 A. L. R., 812, and 99 A. L. R., 909, 912. The last referred to Annotation states:

''The old English rule was very strict in holding that only legal securities could be used for investment of trust funds, and the same doctrine was followed for a time in some jurisdictions of the United States. . . .

''But the modern trend, especially in this country, is toward permitting the testator's desire in the matter to be carried out, even when non-legal investments result.''

The Supreme Court of the state of Kentucky in construing a very similar will and the authority vested in the trustee is in accord with the other cases cited and referred to in support of the rule that the trustee in such a situation as we now have is not limited to the class of investments designated in the statute, but may invest in such securities as he deems expedient, if in so doing he is not guilty of negligence or bad faith. Cromey v. Bull, 4 Ky. Law Rep., 787. See, also, Duncklee v. Butler, 30 Misc., 58, 62 N. Y. S., 921.

Without further reviewing the cases, we are of the opinion that there was no error in the decree of the chancellor and the assignments of error are overruled and the decree of the chancellor is accordingly affirmed.

The cost of this appeal will be, paid by appellant out of the funds of his wards.

Anderson and Ketchum, JJ., concur.