# FIRST NATIONAL BANK OF LENOIR CITY et al.
## v. REV. EARL IVIE et al.—293 S. W. (2d) 34.

Eastern Section. August 24, 1955.

Petition for Certiorari denied by Supreme Court July 20, 1956.

S. E. N. Moore, Knoxville, for appellant.

Dannel & Fowler, Loudon, for appellees.

HOWARD, J. This suit grew out of a written agreement which was entered into under circumstances hereinafter appearing.

On July 10, 1951, a general creditors' bill styled Eason-Norwood Company et al. v. Rev. Earl Ivie et al., No. 3792, was filed in the Chancery Court of Loudon County, Tennessee. The creditors whose claims totaled $6,935.08 were represented by Judge S. P. Dannel, attorney of the Loudon County Bar. Attachment issued and a farm owned by the Rev. Ivie and his wife, Una Ivie, against which there was a $6,000 mortgage, was levied upon. This farm consisting of approximately 158 acres and located in the Second Civil District of Loudon County, was purchased by the Ivies from Edith A. and Elizabeth Kurth, the holders of the $6,000 mortgage. Subsequent to the filing of the bill, Mr. S. E. N. Moore, a member of the Knoxville Bar and also attorney for the Ivies, became interested in his clients' equity in the farm, and at a meeting held in Mr. Moore's office in Knoxville, which was attended by Mrs. Ivie, her attorney, Mr. Moore, and Judge Dannel, representing the creditors, the following written agreement was prepared and executed by all the parties:

"An agreement between Rev. Earl Ivie and wife and their attorney, S. E. N. Moore, on the one hand, and S. P. Dannel, attorney for certain creditors of the said Ivies on the other, said agreement being as follows:

"(1) In order to adjust or arrange the payment of the claims in the hands of Mr. Dannel, the first parties will pay to him the following:

"1—Cash in the sum of $750.00.

"2—They will deliver to him 24 notes of $250.00 each which Mr. Moore has executed to Rev. and Mrs. Ivie for the purchase price or on the purchase price of their farm in Loudon County. These notes total $6,000.00. Out of these notes and the $750.00 cash will be paid all of the small accounts held by Mr. Dannel, and on the account of E. D. Rivers, Jr., the sum of $1734.47 will be paid. The remainder of the notes will be held by him as collateral or as security for the payment of the balance due, if any, on the final settlement of the E. D. Rivers, Jr., account. That is to say, the said Rev. and Mrs. Ivie dispute the Rivers account, claiming that they do not owe the full amount claimed, and they want an opportunity to work out a settlement of the account either amicably or if necessary by litigation, for they feel they do not owe anything like the amount claimed. They are willing to pay at this time $1734.47 on the account, but the remainder of the notes will be simply held as security for whatever balance may be finally worked out as owing on the account.

"(2) The suit which the said S. P. Dannel as attorney has instituted in the Chancery Court at Loudon on said accounts will be dismissed or withdrawn immediately.

"Contract to be completed Monday, July 30—51.

"This July 27th, 1951.

> "Rev. Earl Ivie
> Mrs. Una E. Ivie
> S. E. N. Moore
> S. P. Dannel"

Pursuant to the above agreement, Mr. Moore delivered to Judge Dannel his check for $750 and 24 notes endorsed by the Ivies for $250 each, making a total of $6,750 in cash and notes, and the creditors' bill was dismissed. The notes executed by Mr. Moore and endorsed by the Ivies were payable every 30 days, beginning on or before October 5, 1951. On July 31, 1951, the day after the agreement was signed, Judge Dannel wrote E. D. Rivers, Jr., informing him that the Ivies were questioning the amount of his claim of $5,360.82, and in a reply letter dated August 7, 1951, Rivers declined to reduce the amount of his claim. Thereafter Judge Dannel, by telephone, notified Rev. Ivie of this fact, to which Ivie replied "all right" and requested that he be mailed a copy of Rivers' letter, which was done on September 6, 1951. Subsequently neither Judge Dannel nor either of the Ivies made any further reference to the Rivers' claim or his refusal to reduce it, until January 7, 1953, when the Ivies filed suit in the Chancery Court of Knox County, to which further reference will hereinafter be made.

Three of the 24 notes delivered to Judge Dannel were paid by Mr. Moore at the law offices of Dannel & Fowler, at Loudon, Tennessee, and on December 8, 1951 these attorneys having previously obtained agreements from all the creditors to discount their claims 5%, sold the remaining 21 notes to the First National Bank of Lenoir

City, Tennessee, at the same discount, and with the money obtained paid all the creditors' claims, including the Rivers' claim, which claim was in dispute. On the date the notes were assigned to the Bank, both Judge Dannel and the Bank notified Mr. Moore of this fact, who, after paying several of the notes, defaulted, and on October 6, 1952, the Bank declaring all of the notes due and payable, placed them with Dannel & Fowler, its attorneys, for collection. Thereafter, Mr. Moore paid the principal and interest on four of the notes but refused to pay attorney's fees, and Dannel & Fowler refused to surrender these notes. There was much correspondence between the Bank and Mr. Moore, as well as Judge Dannel and Mr. Moore, regarding his failure to pay the notes on maturity.

On January 7, 1953, the Ivies filed a bill in the Chancery Court of Knox County against Judge Dannel, the First National Bank of Lenoir City, Tennessee, and S. E. N. Moore, seeking an accounting and averring that the series of notes delivered to Judge Dannel were to be held by him only as collateral for the payment of $1,734.47 to Rivers. The bill prayed that all the notes be surrendered to the Clerk of the Court, that Moore be enjoined from paying any more unless the paid notes be surrendered, and that the Bank be required to surrender all paid notes to the defendant Moore, who not only accepted process but requested that Judge Dannel, a resident of Loudon County, come to Knoxville and do likewise. Later, as will hereinafter appear, this suit was enjoined.

The suit out of which the present litigation arose was filed in the Chancery Court of Loudon County on January 17, 1953, by the complainants herein, the First National Bank of Lenoir City, Tennessee, the purchaser and owner of the notes, S. P. Dannel and Arthur M. Fowler, law

partners under the firm name of Dannel & Fowler, endorsers on the notes, against Earl Ivie and wife, Una E. Ivie, the payees and also endorsers on the notes, S. E. N. Moore, the maker of the notes, and R. M. Vertrees, attorney for the Ivies, in a suit filed by them in the Chancery Court of Knox County on January 7, 1953.

After reciting the facts in connection with the filing of the two previous suits of Eason-Norwood Co. et al. v. Earl Ivie et al. and Earl Ivie et ux. v. The Bank et al., heretofore referred to, the complainants' bill alleges, as follows:

"Your complainant Bank now holds the following purchase money notes, the principal and interest on which have been paid by Mr. Moore after the Bank had exercised its option to declare them all due:

> Note No. 13 due Sept. 5, 1952 for $250.00
> Note No. 14 due Oct. 5, 1952 for $250.00
> Note No. 15 due Nov. 5, 1952 for $250.00
> Note No. 16 due Dec. 5, 1952 for $250.00

"On these notes there is now due the attorney fees provided for in the face of the notes, amounting to the sum of $100.00.

"The Bank also holds as a bona fide purchaser in due course the following of said purchase money notes:

> Note No. 17 dated 8/5/51 due 1/5/53 for $250.00
> Note No. 18 dated 8/5/51 due 2/5/53 for $250.00
> Note No. 19 dated 8/5/51 due 3/5/53 for $250.00
> Note No. 20 dated 8/5/51 due 4/5/53 for $250.00
> Note No. 21 dated 8/5/51 due 5/5/53 for $250.00
> Note No. 22 dated 8/5/51 due 6/5/53 for $250.00
> Note No. 23 dated 8/5/51 due 7/5/53 for $250.00
> Note No. 24 dated 8/5/51 due 8/5/53 for $250.00
> Note No. 25 dated 8/5/51 due 9/5/53 for $250.00

"On these notes there is now due the principal sum of $2,250.00, accrued interest to this date of $162.50, attorney fees of $225.00, making a total now due on all of the notes in the sum of $2,637.50.

"Said notes are exhibited hereto and made the basis of this suit.

"—V—

"Your complainants aver that having duly and legally exercised its option to declare the full amount due on said notes, the complainant Bank is entitled to a decree for said total sum and is entitled to an order of this Court foreclosing the lien which it has on the above-described property in order to satisfy its said claim."

The bill further avers that the suit filed by the Ivies in the Chancery Court of Knox County was not in good faith, but was "brought for the sole purpose of embarrassing the complainants and to keep defendant, Moore, from paying the notes as he is required to do under their terms; that said suit was instigated by defendant Moore, and is being maliciously prosecuted and maintained by said defendants; * * * that in order to save the multiplicity of suits and to prevent the accumulation of unnecessary costs * * * injunction should be issued by this Court, and all matters and all questions pertaining to the subject matter of this suit should be brought into this proceeding in order that complete justice and equity may be had among the parties."

The complainants' bill then prays (1) that the First National Bank have a decree against the defendant Moore for $2,637.50; (2) that the vendor's lien against the farm be sustained, and the farm sold subject to the first mort-

gage indebtedness, on terms of 6 to 12 months, to the highest and best bidder; (3) that the defendants be enjoined from taking further steps in the Knox County Chancery cause of Earl Ivie et al. v. The First National Bank et al., and from bringing any other proceedings against the complainants respecting the subject matter of this suit except in this Court. Upon application a writ was issued granting the injunction.

Demurrers filed on behalf of all the defendants were overruled except as to R. M. Vertrees, whose demurrer was sustained.

Answer was filed by the defendant S. E. N. Moore, but he did not appeal from the decree of the Chancellor, and further reference thereto is unnecessary.

Answering, the Ivies averred that the 24 notes were delivered to Judge Dannel only as collateral, and that he had no authority whatsoever to transfer, sell or assign them; that the sale of the notes by Judge Dannel to the First National Bank at Lenoir City was in clear violation of the signed agreement, and that he had no authority to use the proceeds from the collection or sale of the notes except to pay the specific sum of $1,734.47 on the Rivers' claim, and to pay the claims of other creditors; that in violation of the agreement Judge Dannel paid the Rivers' claim in full when he knew that the defendants had denied owing Rivers the full amount claimed of $5,360.82; that the acceptance of $1,734.47 by Rivers and the dismissal of the creditors' suits was a full adjudication of this claim, and the defendants plead res adjudicata. They further averred that the notes having been delivered to Judge Dannel only as collateral security, neither he nor the First National Bank had authority to institute suit

against the maker of the notes without the authorization of the defendants, which the complainants did not have, and that by reason of violation of the agreement by Judge Dannel the defendants were entitled to recover from Judge Dannel and the First National Bank the amount in excess of the claims authorized to be paid, specifically the sum of $3,441.27, and treating their answer as a cross-bill prayed for an accounting and for a decree for said amount.

Much proof was taken, and upon the hearing the Chancellor decreed that under the terms of the written agreement it was incumbent upon the Ivies to work out a settlement with Rivers, and that they had abandoned the idea of getting a reduction on this claim; that the Ivies were indebted to Rivers in the amount claimed by him, and that dismissal of the creditors' suit was not an adjudication of this claim; that the Chancery suit filed by the Ivies in Knox County was to assist the defendant Moore to secure more time for the payment of the notes involved, and the temporary injunction previously issued was made permanent; that the complainant Bank being an innocent purchaser was entitled to a decree for the full amount of the unpaid notes, including interest and attorneys' fees, and the defendants' cross-bill was dismissed. From the Chancellor's findings and decree the Ivies have perfected an appeal to this Court, and errors have been assigned presenting questions for our determination.

■■ Was the acceptance of $1,734.47 by Rivers and the dismissal of the creditors' suit res adjudicata as to this claim? We think not as the written agreement expressly provided that the Ivies "want an opportunity to work out a settlement of the account either amicably or if necessary by litigation." There had been no adjudi-

cation of the part of the claim in dispute, and the rule is well established that to be res adjudicata the judgment or decree must be on the merits. Wright v. Lindsay, 24 Tenn. App. 77, 140 S. W. (2d) 793; Young v. Cumberland Grocery Co., 15 Tenn. App. 89; Mabry v. Churchwell, 69 Tenn. 416; Madison v. New Lumber Co., 3 Tenn. Civ. A. 1.

 Was Judge Dannel authorized to sell or assign the notes to the Bank or a third party? We think not. The written agreement expressly provided that "Out of these notes and the $750.00 cash will be paid all of the small accounts held by Mr. Dannel, and on the account of E. D. Rivers, Jr., the sum of $1,734.47 will be paid. *The remainder of the notes will be held by him as collateral or as security for the payment of the balance due, if any, on the final settlement of the E. D. Rivers, Jr., account. * * * They are willing to pay at this time $1,734.47 on the account, but the remainder of the notes will be simply held as security for whatever balance may be finally worked out as owing on the account.*" (Emphasis supplied.)

We think that the written contract states clearly and without ambiguity that the notes were delivered to Judge Dannel for a particular purpose, and he was obligated to hold them or the proceeds thereof until this purpose was accomplished, viz., until the correct balance due on the Rivers' claim was duly ascertained.

 It seems to be the rule in this state as well as generally elsewhere that where the pledgee violates the conditions under which the collateral was given to him, he is guilty of conversion. Scruggs v. Luster, 48 Tenn. 150; 41 Am. Jur. Sec. 58, p. 624, Sec. 64, pp. 628, 629; 72 C. J. S., Pledges, Sec. 36, pp. 57, 58. However, if the

Ivies owed the full amount of the Rivers' claim, they have not been injured by the sale of the notes to the bank, as the total amount of the claims exceeded the cash and notes by $185.08.

Nor does it appear to us that the Ivies were given reasonable time within which to work out a settlement of the Rivers' claim before it was paid. As previously pointed out, Judge Dannel notified the Ivies on September 6, 1951, that Rivers declined to reduce the amount of the claim. Three months later, on December 8th, the notes were sold to the Bank, and two days thereafter, on December 10th, Judge Dannel, without notifying the Ivies, paid the Rivers' claim in full. Under these circumstances we are unable to concur in the learned Chancellor's findings that the Ivies had abandoned the idea of getting a reduction on this claim.

Finally, did the Chancellor have before him the best available proof of the correctness of the Rivers' claim? We think not, as both of the Ivies in their testimony expressly denied the correctness of this claim. The only proof presented in behalf of Rivers was the deposition of Judge Dannel and exhibits of the account introduced by him. Among these exhibits was an itemized statement containing several disputed items about which neither of the Ivies had an opportunity to question Rivers. This they were entitled to do under our established procedure.

Where it appears from the record, as it does here, that more satisfactory evidence can be obtained upon the question presented, and if produced, will enable the Court to come to a more satisfactory conclusion, the cause may be remanded for such additional proof. Therefore, we think that substantial justice demands that the cause be

remanded for a full hearing on the merits of the Rivers' claim. Code, Sec. 9054.

Accordingly, the decree will be reversed and the cause remanded. The costs incident to this appeal will be taxed against Judge S. P. Dannel, and the costs accruing below will be taxed in that Court.

McAmis, P. J. and Hale, J., concur.

### On Petition to Rehear

HOWARD, J. The complainants have filed a petition to rehear in which they respectfully aver that "If we consider the matter from the angle that Dannel was supposed to hold the notes, collect them and then remit the proceeds— we come up with this: It required the $750.00 check and 11 of the notes to pay the agreed claims. That is to say, the 11th note was due August 5, 1952, or some 13 months after the agreement was signed. Surely the Ivies did not expect Dannel to wait longer than that for them to contact Rivers, if it was their sincere intention or desire of doing so."

Apparently the complainants have overlooked the fact that Judge Dannel was also acting, under the agreement, as a Trustee in collecting the notes, and disbursing to the respective designated creditors the funds collected, and he was under a duty not only to exercise "good faith, with due diligence," but likewise not to act contrary to the authority conferred upon him by the written agreement. Knox County v. Fourth & First Nat. Bank, 181 Tenn. 569, 182 S. W. (2d) 980; Falls v. Carruthers, 20 Tenn. App. 681, 103 S. W. (2d) 605.

As previously pointed out, Judge Dannel did not wait 13 months after the agreement was signed to dispose of

the notes and pay the Rivers' claim in full, but waited only three months, despite the fact that the last note did not mature for 24 months, and under these circumstances the argument that the Ivies had, by their conduct, abandoned the idea of getting a reduction on the claim, is without merit.

On remand we are of the opinion that the burden of proving the amount of the Rivers' claim is upon the complainants, since the Ivies in their depositions have denied owing Rivers any amount in excess of the $1,734.47 which they authorized Judge Dannel to pay.

While we realize that our opinion in this case may work a hardship upon some of the parties concerned, we likewise realize that good conscience and basic principles of equity must be applied.

Petition to rehear will be denied.

McAmis, P. J. and Hale, J., concur.