# BROOKSIDE MILLS, INC. v. D. W. MOULTON, Commissioner, Department of Highways and Public Works, State of Tennessee.—404 S.W.(2d) 258.

Eastern Section. July 27, 1965.

Certiorari Denied by Supreme Court December 6, 1965.

Thomas Epstein, New York City, and Ambrose & Wilson, Knoxville, for plaintiff in error, Brookside Mills, Inc.

George F. McCanless, Attorney General, J. Malcolm Shull, Assistant Attorney General, Nashville, and Earl S. Ailor, Knoxville, for defendant in error, D. W. Moulton, Commissioner.

COOPER, J. This is a condemnation proceeding brought by D. W. Moulton, as Commissioner of the Department of Highways and Public Works of the State of Tennessee, to acquire 9840 square feet of land owned by the defendant, Brookside Mills, Incorporated, to be used in the construction of the North-South Expressway through Knoxville, Tennessee, known as Interstate 75.

The property taken was a portion of a 20-acre tract of land located near the geographic center of Knoxville. The south boundary of the 20-acre tract abutted some 620 feet on Baxter Avenue, a major east-west traffic artery in Knoxville. The southwest corner of defendant's property abutted on Brookside Court, which extended from Baxter Avenue north one block.

On the east, the defendant's property was bounded by the Southern and L. & N. Railways.

On the west, there was no developed access; however, there was potential access, if needed, in that Anderson Avenue, Brookside (sometimes referred to as Sidebrook) Avenue, and Belle Aire Avenue had been dedicated to the boundaries of defendant's property. These streets had not been opened, but terminated at Marion Avenue (a major north-south traffic artery) one block to the west of defendant's property.

On the north, access to defendant's property was possible over Cline (Morris) Street to Railroad Street, which terminated at the northeast corner of defendant's property. This street was unpaved, winding, and had a steep grade. There also was potential, but undeveloped and unused, access to the northern boundary of defendant's property over Ashe and Van Streets. These streets,

though dedicated to defendant's northern property line, terminated a block away at West Scott Street, which ran east and west.

About the turn of the century, the defendant constructed several buildings on the 20-acre tract, with a total floor space of approximately 500,000 square feet.

Prior to 1955, defendant's property was devoted solely to textile operations, and the only access needed or used was to Baxter Avenue.

In 1955, defendant discontinued the major part of its textile operations, and endeavored to liquidate its machinery and to adapt its buildings to other uses. Prior to the construction of the expressway, defendant had little or no success in renting the buildings on the 20-acre tract as they became available. The record does show that it leased part of its facilities as a tobacco warehouse for two months of each year, and other facilities as a general warehouse; however, the rental income is not clearly set out in the record. The Baxter Avenue access was all that was needed and used for this operation.

The failure to develop the potential access to the west and north was due, in part, to the nature of the business conducted on the property prior to the construction of the Expressway, and, in part to the lay of the land—the land to the west and to the north being much higher than defendant's property.

The Expressway, as constructed, destroyed the potential access to the west and to the north. The southern leg of the Brookside Court, and the lane connecting it to the northern leg, were also closed to permit the construction of a leg of the cloverleaf interchange connecting Inter-

state 75 to Baxter Avenue. This interchange channels interstate and cross-town traffic into Baxter Avenue directly in front of defendant's property.

The developed and used access to Baxter Avenue and the developed access to Railroad—Cline (Morris) Street were not affected by the construction of the expressway, other than by the increased traffic flow due to the Baxter Avenue interchange, and the increased speed of travel between defendant's property and other parts of Knoxville over the Expressway system.

In the trial court, the defendant did not contest the right of the State ''to take'' the property but insisted that, in addition to compensation for the land taken, it was entitled to ''incidental damages of approximately $350,000.00'' for loss of access resulting from the Expressway construction. In support of this position, the two principal officers of the corporation, and a real estate agent, testified that the highest and best use for the property was as commercial property, and that the lack of access to the north and to the west restricted the use of several buildings, resulting in a loss of value of from $340,000.00 to $348,000.00.

The State introduced several real estate appraisers who testified that defendant's property, being located on the Baxter Avenue interchange, had more and better access than it had before the construction of the Expressway and was, as the result, more valuable.

The record also shows that in August, 1959, some 4 months after the taking of a part of the defendant's land for the Expressway, the defendant leased 107,000 square feet of floor space to Zayre's Department Store for ''a minimum rental of 50 cents per square foot against 2%

of sales", which rental amounted to approximately $57,-000.00 in 1963. Zayre's store is so located that it uses the Baxter avenue access.

Other rental income, on a short term basis, approximates $33,000.00 per year, with approximately one-half of the available space vacant.

The jury found the value of the "land taken" to be $3,000.00, and found "that any incidental damages suffered were fully compensated for by the incidental benefits of the highway construction." The verdict was approved by the trial court and, on the overruling of defendant's motion for a new trial, this appeal in error resulted.

██ On appeal, the defendant insists that the trial court "erred in not granting [defendant's] Motion for a New Trial on the ground that the jury's verdict was clearly against the preponderance of the evidence. * * *" This assignment is not sufficient in law. Our only function is to see if there was any material evidence to support the finding of the jury. Woody v. Cope, 207 Tenn. 78, 338 S.W.(2d) 551, 4 A.L.R.(3d) 314; McAmis v. Carlisle, 42 Tenn.App. 195, 300 S.W.(2d) 59.

██ Defendant further insists that the trial court erred in failing to instruct the jury that, as a matter of law, the defendant suffered incidental damages as the result of the taking of a portion of its land and the construction of the Expressway, and that there were no incidental benefits. On checking the record, we find that no motion for a directed verdict was made by the defendant. Consequently, the trial court could not be in error for failing to direct a verdict. Further, as shown above, there was material conflicts in the evidence relative to

the impact on defendant's property by the loss of potential, but undeveloped access, and the acquisition of ready access to the interstate system. Where such conflict exists, the Court can not direct a verdict but must submit the controverted issues to the jury. See generally Shuler v. Clabough, 38 Tenn.App. 333, 274 S.W.(2d) 17; Supreme Liberty Life Ins. Co. v. Pemelton, 24 Tenn.App. 576, 148 S.W.(2d) 1; Osborn et al. v. City of Nashville et al., 182 Tenn. 197 at 203-204, 185 S.W.(2d) 510, 513.

In its supplemental brief, the defendant points to cases wherein the courts of this State have held the right of access to an abutting street is a property right, and insists that the trial court erred in proceeding on the theory and instructing the jury that, other than compensation for the land taken, the damages suffered by defendant would be incidental and could be offset by special benefits.

"The overwhelming weight of authority [including the courts of this State] recognize[s] * * * that the right of access to and from a public highway is one of the incidents of ownership or occupancy of land abutting thereon, of which the owner cannot be deprived without compensation, whether the fee to the way is in the public or abutter." 73 A.L.R.(2d) 656; 43 A.L.R(2d) 1074—1079; 18 Am.Jur., Highways, Sections 158, 193 and cases there cited; 29A C.J.S. Eminent Domain sec. 105; 1 Antieau, Municipal Corporation Law, Section 9.12, p. 607. See also City of Memphis v. Hood, 208 Tenn. 319, 345 S.W.(2d) 887; Hamilton County v. Rape, 101 Tenn. 222, 47 S.W. 416; Knox County v. Lemarr, 20 Tenn.App. 258, 97 S.W.(2d) 659; Shelby County v. Dodson, 13 Tenn.App. 392.

T.C.A. secs. 23-1414 and 23-1537 provide, in substance, that where land or property rights are taken for a public

improvement, the trier of fact shall award the value of the land or rights taken without deduction, but permit the offset of incidental benefits resulting to the owner by reason of the proposed improvement against any incidental damages.

Where the property right taken is the right of access to an abutting street, the measure of damages is the difference in the fair cash market value of the defendant's property prior to the taking or impairment of the access and its value after the taking and the construction of the project for which the property right was taken. See T.C.A. sec. 23-1537. The trier of fact, in determining the amount of the award, must be governed by the principle that the owner of the land shall be treated as one offering it for sale, at a fair price, while not being under any stress of circumstances that would induce him to sacrifice his property, and the condemnor as an intending buyer, who is likewise free from stress, as not being forced to buy. Lewisburg & N. R. Co. v. Hinds, 134 Tenn. 293, 183 S.W. 985, L.R.A.1961E, 420. The fact that the property has other access, or is given other access in the course of construction would be a material factor to be taken into consideration in determining the before and after value of defendant's property and, consequently, the value of the access taken. See State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.(2d) 988; State v. Ward, 41 Wash.(2d) 794, 252 P.(2d) 279; 18 Am.Jur., Eminent Domain, Sec. 185 (1962 Supplement, p. 117). Cf. Knox County v. Lemarr, 20 Tenn.App. 258, 97 S.W.(2d) 659.

Despite the declarations by the appellate courts of this state that the right of access to an abutting street is a property right—the loss or substantial impairment

of which is to be compensated for by the condemning authority, without deduction—the trial courts, on occasion, have treated the loss of access as an element of incidental damages, which can be offset by incidental benefits resulting from the construction of the public improvement. See State v. Rascoe, 181 Tenn. 43, 178 S.W.(2d) 392; Moulton, Comm'r v. Beene, decided by this Court on January 17, 1964. This latter position or theory was adhered to by both parties throughout the trial in the present case, and the case was so submitted to the jury. It was not until the defendant had lost its case and had perfected its appeal to this court that the question of whether or not the loss of access was a property right was raised. We think the question was raised too late in view of the well-settled doctrine in this state that a party, on appeal, will not be permitted to depart from the theory on which the case was tried in the lower court. Clement v. Nichols, 186 Tenn. 235, 209 S.W.(2d) 23; Turner v. Zager, 50 Tenn.App. 674, 363 S.W.(2d) 512; Nashville Gas & Heating Company v. Phillips, 17 Tenn.App. 648, 69 S.W.(2d) 914; Hilton v. Wagner, 10 Tenn.App. 173; 4 C.J.S. Appeal and Error sec. 241.

"In the appellate court, a party is confined to the theory upon which the case was tried with his approval below." Nashville Gas & Heating Company v. Phillips, supra, 69 S.W.(2d) at page 924.

In other assignments, the defendant insists that the record contains no material evidence of incidental benefits, taking the position that the benefits resulting from the construction of the expressway interchange were general and not special. We find no merit in this insistence.

■ As heretofore noted, defendant's property adjoins one of the four corners of the cloverleaf interchange at Baxter Avenue, and, as the result, traffic from the Expressway is channeled into Baxter Avenue directly in front of defendant's property. Several witnesses for the State testified that the increased traffic flow, and the increased accessibility to defendant's property from other sections of Knoxville were benefits of great value, and were peculiar to the properties located on the four corners of the interchange.

In Faulkner v. City of Nashville, 154 Tenn. 145, 285 S.W. 39, the Court held that the advantages of a more convenient access to property, and a more desirable frontage on a road or street, are direct and peculiar benefits to be considered by the trier of fact in estimating damage to the remainder of the property, though other property on the same street received like benefits, not common to all property in the vicinity. In doing so, the court pointed out that:

"A benefit is not prevented from being special by the fact that estates on the opposite side of the way are benefited in like manner from the construction of the highway."

Defendant has also assigned as error the trial court's action in excluding testimony of civil engineers as to (1) the value of the defendant's property before and after the taking, and the amount of incidental damages resulting from loss of access, and (2) the feasibility and cost of reducing incidental damages by providing access to the west and north of defendant's property by tunnelling under the Expressway.

■ The record shows that two engineers, Wayne L. Smith and William J. McCoy, were called as witnesses by

the defendant. Neither of the engineers viewed the property before the construction of the Expressway, but had access to the various deeds and plats of record and viewed the premises after construction was completed. Both engineers were asked their opinion as to the before and after value of the land. The trial court, in attempting to determine their qualifications to testify on this issue, specifically asked if they were experts in the field of real estate values, and both witnesses testified in the negative. In view of the witnesses admitted lack of qualification to testify on real estate values, we see no error in the exclusion of their testimony. It also should be noted that the record contained testimony of the defendant's principal officers and a real estate agent selected by them on the "before and after value." Consequently, the testimony by the engineers, if admitted, would have been cumulative only and would not have materially affected the result of the trial. T.C.A. sec. 27-117.

 Likewise, we find no reversible error in the trial court's action in excluding proffered testimony relating to the cost of providing defendant with substitute access to the west and north by tunnelling under the Expressway. As noted by the trial court, such evidence deals with the cost of restoring the property to its original, if not to a better, condition, while the issue to be decided was the difference in the value of the defendant's property before and after the taking by the State and the construction of the Expressway. See Evans v. Wheeler, 209 Tenn. 40, 348 S.W.(2d) 500.

Defendant's remaining assignments of error are directed to the charge of the court, the defendant criticizing the court's charge on the burden of proving incidental damages, the definition of special benefits, the distinction

between special and general benefits, and the factors to be considered by the jury in determining the "fair cash market value" of the land taken. In each instance, the defendant advances the argument that the charge was too general and was not complete, and that, as the result, it was erroneous and mislead the jury.

█ It is an estblished general rule in this state that when a party is of the opinion that the instructions given by the court are not explicit enough or do not cover all phases of the case, he should call it to the attention of the court and tender other and fuller instructions; otherwise, he cannot predicate error upon the meagerness of the charge, or upon omissions, or ambiguities in the charge, as given. Womac v. Casteel, 200 Tenn. 588, 292 S.W.(2d) 782; Dorrity v. Mann. 43 Tenn.App. 554, 310 S.W.(2d) 191; Management Services v. Hellman, 40 Tenn. App. 127, 289 S.W.(2d) 711; All v. John Gerber Co., 36 Tenn.App. 134, 252 S.W.(2d) 138.

But aside from the failure of the defendant to suggest to the trial court in the present case that its charge needed to be clarified or amplified, we are of the opinion—after reading the charge in its entirety with special emphasis on those areas set out by the defendant in its various assignments—that the charge, as given, was adequate, covered the issues in the case, and was not misleading in any respect. Accordingly, we find no merit in the assignments directed to the court's charge.

Having considered defendant's assignments of error, and having concluded that no reversible error was committed in the trial of the case, the judgment below is affirmed. Costs of the appeal are adjudged against the defendant and its surety.

McAmis, P.J., and Parrott, J., concur.