# N. F. STOKELY v. SOUTHERN RAILWAY COMPANY.—418 S.W.(2d) 255.

Eastern Section. March 20, 1967.

Certiorari Denied by Supreme Court August 7, 1967.

Carter B. Wall, Knoxville, Fred L. Myers, Newport, for plaintiff in error.

William H. Inman, Morristown, for defendant in error.

COOPER, J. N. F. Stokely has appealed from a judgment entered in the Circuit Court of Cocke County dismissing his suit against the Southern Railway for damages for loss of access allegedly resulting from the elimination of a railroad grade crossing.

The evidence, except on the issue of damages is markedly without conflict.

The plaintiff, Stokely, is the owner in fee of three tracts of land near the confluence of Big Creek and the French Broad River in the Del Rio Community of Cocke County. The two smaller tracts, each a little larger than one acre, are adjacent to each other and abut the railroad right of way. A tenant house is on one of these tracts. The third tract, about 14 acres in size, lies nearby and is connected to the other two tracts by a public road.

Prior to 1962, this public road extended westwardly from Del Rio to Big Creek, there it looped to the south to a point where the creek could be forded, then it crossed over the Stokely property and the disputed railroad crossing, and terminated at a point some 3 miles west of the Stokely property. Stokely had an access over and across the road in two directions, though he only used the access to the west and across the railroad tracks on occasion to go hunting. The four or five families living on land lying to the west of the Stokely property, however, made full use of the road and the railroad crossing whenever Big Creek was fordable, as it was the only way they had to get to Del Rio. In times of highwater, it was necessary for these families to walk across the railroad bridge which, of course, was dangerous.

In 1962, at the urging of the local Ruritan Club, residents of the Del Rio community petitioned Cocke County Court and the Southern Railway Company for assistance in building a bridge across Big Creek. The railroad donated the necessary land on either side of Big Creek and the stringers for the bridge. Cocke County then built the bridge joining two segments of the old road, thus eliminating the loop to the ford and making it unnecessary for those families living on the land lying to the west of the Stokely property to use the disputed

crossing. The crossing was of value, however, to Stokely as it not only gave him access to the west but gave him access to the new bridge and to Del Rio that was not subject to periodic flooding.

The Southern Railway removed the disputed crossing some six weeks after the bridge was completed, primarily as a safety measure.

Since the removal of the crossing, the plaintiff has gained access to the new bridge by using a way made by the county during the construction of the bridge. This way leads from the old road near the Stokely place under the west end of the railway trestle. The way, however, does not provide enough clearance for movement of all farm machinery, is subject to periodic flooding, and maintenance has proven to be the responsibility of Mr. Stokely. Further, though the railroad representatives have disclaimed any intention ever to block this way, Mr. Stokely has not been granted a permanent easement under the railroad trestle.

(A plat showing the old road, the new construction, the disputed crossing, and the Stokely land is set out here for clarity.)

E & Sou. Rwy. Nr.

1822' to M.P. 5

V. Pass

New Bridge

11'

12'

48'

Creek

New Road

Old Road

B. & O.

Grade crossing closed

New Road

Old Road

Old Road

To Knoxville

100'

To Runnion Propert'y

100'

N. F. Stokley Propert'y

House

FILED
OCT 4 · 1966
J. Lewis, Clerk.

SO...
RAILW...
CENTRA...
OFFICE OF CHIEF ENGINEER
D...
BY DEL R...

Though plead, there is no evidence in the record that the defendant railroad was granted permission by any official body to remove the disputed crossing. Neither is there any direct evidence that the Cocke County Court officially abandoned and closed the section of the old road forming the loop, but the record does show that the County has made no effort to maintain the road over the loop in the years since the Big Creek bridge was constructed.

The trial judge, sitting without the intervention of a jury, found from the above evidence that (1) the action of the defendant had not deprived plaintiff of any easement of access, (2) that if there was an actual loss of access, it was due to the action of Cocke County in abandoning an existing public road, and (3) that the plaintiff had suffered no damage, either in the reduction of the market value of his property or in its rental value, by reason of the elimination of the grade crossing. We cannot agree with either of these findings.

As pointed out in Current v. Stevenson, 173 Tenn. 250, 116 S.W.2d 1026, 1028, " 'An abutting owner has two distinct kinds of rights in a highway, a public right which he enjoys in common with all other citizens, and certain private rights which arise from his ownership of property contiguous to the highway, and which are not common to the public generally, and this regardless of whether the fee of the highway is in him or not. These rights are property of which he may not be deprived without his consent, except upon full compensation and by due process of law. They include the easement of access, and of light and air, the right to lateral support, and the right to have the highway kept open as a

thoroughfare to the whole community for the purpose of travel.' '' (29 C.J. 547)

In Anderson v. Turbeville, 46 Tenn. 150, 157, 158, it is said: ''With respect to the closing of a public street, the municipal corporation representing the State, has the power to abandon the public use of it and be exonerated from obligation to keep it in repair, and otherwise suitable for the public use. * * * (citing authorities)

''But the owners of lots bordering upon a public street, have an easement of way in the street, in addition to the use of it in common with the people generally. This additional right of way is private property, within the protection of the law, as much as if it were corporeal property, and cannot be taken for public use without compensation.''

In Jackson v. Hutton, 15 Tenn.App. 281, the defendant was authorized to close an abandoned public road by one or more of the Highway Commissioners of Marion County, in enjoining the defendant from closing the road, this court pointed out that:

''Whatever may have been the legal consequence of the things done by the officers of Marion County with the purpose of discontinuing the old road as a public highway, it is quite apparent that it was their intention to substitute the new highway for the old road and to relieve the County of the obligation to maintain the old road as a public highway; but, assuming that there was an abandonment of the old road as a public highway, it did not, and could not affect the private right of the complainants, as abutting landowners, to an easement of access to their premises over the old road.'' (Citing numerous cases.)

■ This court also enjoined the obstruction of an abandoned public road in favor of an easement claimed by the owner of lands abutting upon the road in the more recent case of Cottrell v. Daniel, 30 Tenn.App. 339, 205 S.W.2d 973, 976. In doing so, it was stressed that:

"We realize that it would be desirable from the defendants' viewpoint to have this easement done away with, but we are dealing with fixed and settled property rights. Altho complainant does not need this easement, she has a right to exercise it if she so desires."

■ On considering the above facts, in the light of the authorities cited, we think it evident that the complainant had a vested interest in the use of the public road abutting his property, particularly that part within the loop, and that an abandonment of the road by Cocke County, did not operate to divest the plaintiff of his right to use the road.

■ We further think the evidence shows that plaintiff's easement of access over that portion of the public road leading from plaintiff's land across the grade crossing to the new bridge was destroyed by the unilateral action of the railroad in removing the grade crossing. Under the above authorities, the railroad is liable to the plaintiff for the loss of, or the taking of, this right of access.

" 'The overwhelming weight of authority [including the courts of this State] recognize[s] * * * that the right of access to and from a public highway is one of the incidents of ownership or occupancy of land abutting thereon, of which the owner cannot be deprived without compensation, whether the fee to the way is in the public or abutter.' " Brookside Mills Inc. v. Moulton, 55 Tenn.

App. 643, 404 S.W.2d 258. See also Anderson v. Turbeville, supra.

The trial judge held, prior to trial, that the measure of damages, if any, would be the diminution of rental value of plaintiff's property as the result of his loss of access. This holding was evidently predicated upon the argument of defendant that the elimination of the crossing was temporary, and that the crossing could be easily restored—this argument is included in defendant's brief before this Court. We are not impressed by the argument for we find, both from statements of witnesses for the defendant and from the defendant's actions during the past 5 years, that the Southern Railway intended, at the time it eliminated the crossing, to close it permanently. Consequently, the action of the railroad, in our opinion, constituted a taking of a property right of the plaintiff.

T.C.A. 23-1414 provides, in substance, that where land or property rights are taken by a railroad, the trier of fact shall award the value of the land or rights taken without deduction, but permit the offset of incidental benefits resulting to the owner by reason of the proposed improvement against any incidental damages.

Where the property right taken is the right of access to or over a public street, the measure of damages is the difference in the fair cash market value of the plaintiff's property prior to the taking or impairment of the access and its value after the taking and the construction of the project for which the property right was taken. T.C.A. 23-1414. See also Brookside Mills Inc. v. Moulton, 55 Tenn. App. 643, 404 S.W.2d 258, which goes on to state that:

"'The trier of fact, in determining the amount of the award, must be governed by the principle that the owner of the land shall be treated as one offering it for sale, at a fair price, while not being under any stress of circumstances that would induce him to sacrifice his property, and the condemnor as an intending buyer, who is likewise free from stress, as not being forced to buy. Lewisburg & N. R. Co. v. Hinds, 134 Tenn. 293, 183 S.W. 985, L.R.A. 1916 E, 420. The fact that the property has other access, or is given other access in the course of construction would be a material factor to be taken into consideration in determining the before and after value of defendant's property and, consequently, the value of the access taken. See State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988; State v. Ward, 41 Wash.2d 794, 252 P.2d 279; 18 Am.Jur., Eminent Domain, Sec. 185 (1962 Supplement, p. 117). Cf. Knox County v. Lemarr, 20 Tenn.App. 258, 97 S.W.2d 659.''

■ As noted above, the trial judge limited the introduction of evidence of damages to the diminution of rental value, if any, of plaintiff's land as a result of the elimination of the grade crossing and the consequent loss of access. The parties did agree, however, that the trial judge could consider evidence introduced in an earlier trial and preserved by a wayside bill of exceptions. The wayside bill of exceptions, which is a part of the record in this court, contains testimony of several witnesses as to the value of plaintiff's property, both before and after the elimination of the railroad crossing. It is noted, however, that several of the witnesses predicated their valuation of plaintiff's property upon the mistaken belief that the substitute way under the railroad trestle was a permanent way which could not later be restricted or

eliminated by the railroad when, in reality, there is no evidence to this effect. As the result, the testimony of these witnesses is of little or no value to us in making an award of damages in this case.

Under these circumstances, we think justice will be better served if this court forgoes the making of an award of damages and remands the cause to the trial court for the introduction of additional evidence on the issue of damages only, and for a finding by the trial court on this issue.

Where it appears from the record, as it does here, that more satisfactory evidence can be obtained on the issues presented, and, if produced, will enable the court to come to a more satisfactory conclusion, the cause may be remanded for such additional proof. T.C.A. 27-329. First Nat. Bank of Lenoir City v. Ivie, 41 Tenn.App. 187, 293 S.W.2d 34; Federated Mut. Imp. & Hdwe. Ins. Co. v. Anderson, 49 Tenn.App. 124, 351 S.W.2d 411.

Accordingly, the judgment in this case is reversed, and the cause is remanded to the trial court for the introduction and consideration of additional proof on the issue of damages, and for the entry of a judgment based on that proof.

McAmis, P. J., and Parrott, J., concur.