**STATE of Tennessee, ex rel Commissioner, Department of Transportation, Petitioner/Appellant,**

v.

**E.C. COX and wife, Nina Cox, Defendants/Appellees.**

**City of Gallatin, and Sumner County, Tennessee, Defendants.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 11, 1991.

Rehearing Denied Oct. 2, 1991.

Application for Permission to Appeal Denied by Supreme Court March 9, 1992.

Charles W. Burson, Atty. Gen. and Reporter, L. Vincent Williams, Asst. Atty. Gen., Nashville, for petitioner/appellant.

Nathan Harsh, Harsh, Kelly & Smith, Gallatin, for defendant/appellee.

## OPINION

LEWIS, Judge.

This condemnation action involves the partial taking of a tract of land in the City of Gallatin, Tennessee, owned by the defendant-appellee, Nina Cox (Cox), in connection with the construction of State Route 109 By-Pass in Sumner County, Tennessee.

The Tennessee Department of Transportation (TDOT) entered into an agreement with the City of Gallatin whereby TDOT would be responsible for the acquisition of the right-of-way of the by-pass, as well as for the actual construction of the by-pass. As part of the project, a portion of Nashville Pike (State Route 6) was widened, and an intersecting road (Lock Four) was relocated. Both the widening of Nashville Pike

and the relocation of Lock Four Road affected the Cox property.

TDOT filed its petition for condemnation of the Cox property on 14 September 1989. Attached to the petition as Exhibit "A" was a description of the property. This property consisted of .55 acre. The source of the title of the .55 acre is in Book 115, page 113, Register's Office of Sumner County, Tennessee. On that same date, TDOT tendered $81,900.00 as the amount of damages to which it determined Cox was due pursuant to Tennessee Code Annotated Section 29–17–802.[1]

Defendant filed an exception to the petition for condemnation on 20 September 1989.

An order of possession was signed by the trial court on 4 October 1989. On 4 October 1989, the entire property which contained .86 acre was owned by the defendant, Nina Cox. The tract owned by Mrs. Cox is known as Lots 4 and 5, Block "A", Woodlawn Estates Subdivision.

Trial was set for 8 June 1990 on the amount of damages only by an agreed order signed by counsel for the respective parties and entered by the trial court. On 8 March 1990, the trial court *sua sponte* entered a "Notice and Order of Pre-trial Conference" setting a pre-trial conference for 4 May 1990.

Pursuant to the 8 March 1990 order, counsel for the parties were instructed to prepare a pre-trial memorandum to be filed "no later than five (5) days prior to the time set" for the pre-trial conference with a copy to be served on adversary counsel. Paragraph five of the court's order directed that the memoranda include "a list of witnesses of each party, and the comparable sales to be relied upon, if the witness is a land expert (these lists shall be exchanged on the pre-trial date in open Court)." The parties' pre-trial memoranda were to be filed on 27 April 1990.

Counsel for the defendant landowner filed his pre-trial memorandum within the time directed by the trial court. TDOT did not file a pre-trial memorandum previous to the pre-trial conference. Pursuant to the trial court's order of 8 March 1990, Cox furnished information regarding her appraisers to the court under seal. At the 4 May 1990 pre-trial conference, TDOT did not furnish the information set forth in the trial court's pre-trial order. The trial court extended the deadline to 7 May 1990 within which TDOT was to file its information. When the information was not produced by the extended deadline, Cox filed a motion for sanctions requesting the trial court to impose "suitable sanctions" against TDOT for having failed or refused to provide counsel for Cox "names of the expert witnesses it expected to call to testify as to the value of subject property and (2) the value assigned to subject property by each appraiser along with the comparable sales used to arrive at the appraised value."

The motion for sanctions was heard on 4 June 1990 and, by order entered 6 June 1990, sanctions were imposed against the State of Tennessee for willfully refusing to comply with the court's order. The order stated that the same was an abuse of the discovery process and constituted contempt of court. As sanctions, the trial court ordered that TDOT not be allowed to present the testimony of any expert witness as to the value of the subject property. The trial court further awarded judgment in favor of Cox in the amount of $300.00 against TDOT for reasonable attorney's fees incurred by the Cox.

Following the close of proof, the court instructed the jury, and the jury retired to deliberate. The jury returned a finding that Cox was entitled to $115,500.00 for the

---

1. **Tenn.Code Ann. § 29–17–802. "Deposit of amount of damages.**—When a governmental entity or a levee or drainage district authorized to condemn by § 29–17–801(a)(2) deems it necessary or desirable to condemn any property or property rights as set out in § 29–17–801, it shall proceed to determine what it deems to be the amount of damages to which the owner is entitled because of the taking of said property or property rights, and shall deposit said amount with the clerk of the circuit or law court having jurisdiction in the county in which the same or a portion of the same is located, and shall file a petition in said court asking that the same be condemned and decreed to the condemner."

.55 acre taken in fee simple and $20,000.00 for incidental damages to the .31 acre remainder for a total judgment of $135,-500.00. TDOT's motion for a new trial or remittitur was overruled by the court. The court specifically affirmed the verdict finding it to be within the range of reasonableness.

The State has appealed and presented twelve issues. Most of these issues have been addressed in connection with other cases appealed by the State which arose out of condemnations of property in this same area.[2]

TDOT's first issue is whether "the Trial Court properly overruled TDOT's motion to prohibit valuation testimony based on commercial sales, when there existed a genuine question of fact as to the likelihood of the subject [property] being rezoned."

Gene Carmen and William Allen Parks appraised the subject property considering its potential for commercial use. When they appraised the property, they were aware that it was zoned for residential use as of 4 October 1989, the date of taking.

■ Evidence of the potential use a property may be put to is admissible so long as the contingency for that use is not unlikely.

This Court, in defining evidence which is to be avoided, has stated that it is testimony which discusses uses which are "unfeasible or remote in likelihood or in time given the circumstances and location of the property." *State v. Parkes*, 557 S.W.2d 504, 508 (Tenn.App.1977).

Gene Carmen testified that commercial growth had extended down Nashville Pike toward the subject property so that little commercial property remained available. He also testified that, based on his experience and observation, he considered such growth to affect and change the use of the subject property. Mr. Carmen was of the opinion that "Gallatin is going to continue to grow and it's going to have to expand commercial-wise in that direction. That's a hot spot for it, where all the traffic's going by."

■ In regard to the restrictions which TDOT maintains prevented commercial use, Mr. Carmen identified the restrictions and proceeded to trace them through Mrs. Cox's chain of title. The Fitz to Ford deed in defendant's chain, dated 17 April 1947, was the conveyance where the restrictions of its commercial use first appeared. This conveyance was made subject to the property being used for residential purposes only, and the restrictions were "declared to be covenants running with the land and ... binding upon subsequent purchasers and owners of said land or any part thereof, until the first day of May, 1975...." The property taken was not restricted as to residential use only on the date of taking, 4 October 1989. The only obstacle which hindered commercial use on that date was the then present zoning of the property. Mr. Carmen testified that he sold property subject to the zoning change and that such changes were a regular occurrence.

William Allen Parks, Jr., testified that there had been recent zoning changes at Harris Lane and Nashville Pike to accommodate the relocation of a Ford dealership to what had previously been residentially zoned property. Mr. Parks did not consider defendants' tract comparable with similar sized residentially valued lots located in the vicinity.

■ There was proof that there was a likelihood of rezoning based upon the growth patterns of the City. This likelihood was not so remote as to be infeasible. There was a genuine question of fact as to the aforesaid likelihood, and the trial court properly overruled TDOT's motion to exclude testimony based on comparable commercial sales.

Additionally, the City's land-use plan adopted subsequent to the taking did not conclusively determine potential use. The proof indicated that uses in conflict with

2. It seems that the State went to trial in the trial court not prepared and that the State is attempting to rectify that error in this Court.

the plan were in existence. This issue is without merit.

TDOT's second issue is: whether "the Trial Court properly denied TDOT's motion in limine and allowed defendant landowner's experts to testify as to value of the subject [property] based on comparable sales."

Both Mr. Parks and Mr. Carmen, testifying on behalf of Cox, testified that they considered the subject property to have commercial potential. Both Mr. Carmen and Mr. Parks testified that they used comparable local sales to arrive at a value of the subject property.

TDOT argues that both of these witnesses valued the property based on comparable commercial sales. However, the record shows that neither of these witnesses valued the subject property as to commercial value. Rather, they testified that they recognized its potential for commercial use and valued it accordingly.

TDOT argues that a spectre of rezoning hung over Cox's property with such a fog of negativity as to eliminate any chance of future commercial use.

■ The proof is otherwise. TDOT's only witness as to zoning was Mr. Ted Clarke who admitted that changes in derogation of the City's land-use plan had been made.

■ The probability of rezoning or removal of restrictions is a question of fact and is for the determination of the jury. *Shelby County v. Mid–South Title Co., Inc.*, 615 S.W.2d 677, 680 (Tenn.App.1980). Nina Cox and her witnesses maintained that the restrictive covenants against commercial use had expired. She introduced proof to that effect. Subsequent deeds referring to restrictions did not indicate restrictions were covenants running with the land. Covenants restricting the use of land and preventing its free and unrestricted enjoyment are not favored and will be strictly construed against the restrictions. *Lowe v. Wilson*, 194 Tenn. 267, 269, 250 S.W.2d 366, 367 (1952). This issue is without merit.

TDOT's third issue is: "The Trial Court erred in overruling TDOT's motion *in limine* and allowing defendant and her experts to testify [as] to the property's potential commercial value."

■ TDOT argues that the trial court erred in allowing Cox's expert to present testimony regarding the property's potential for commercial use. The experts stated that their testimony was based on the property's highest and best use. Property's highest and best use may be considered in determining value, but it may not be the sole measure thereof. *Davidson County Bd. of Educ. v. First Am. Nat'l Bank*, 202 Tenn. 9, 14, 301 S.W.2d 905, 907 (1957).

■ Defendants' expert witnesses based their appraisals on the fiction that the owner is treated as one offering the property for sale at a fair price while under no compulsion to sell the property and that the condemnor is a buyer who is likewise free from stress and not forced to buy. *Brookside Mills, Inc. v. Moulton*, 55 Tenn.App. 643, 651, 404 S.W.2d 258, 262 (1965). Both Mr. Carmen and Mr. Parks recognized the subject property should be valued at potential commercial prices.

The State's expert, Preston Balthrop, originally appraised the property as having commercial potential. However, he reduced his appraisal some two or three weeks prior to trial upon learning that there were restrictions in Cox's deed restricting the property to residential use only.

■ "The objective of the court in an eminent domain proceeding is to ascertain and award just compensation to the landowner." *Love v. Smith*, 566 S.W.2d 876, 878 (Tenn.1978). To meet this goal, the trier of fact must hear proof. The trial court properly overruled the State's motion *in limine* to prohibit the landowner's evidence as to the property's potential commercial value. This issue is without merit.

TDOT's fourth issue is: "The Trial Court erred in permitting the defendant landowner and her experts to value the subject

property based on its potential commercial use."

TDOT argues that it was error to allow the property to be valued based on its potential commercial use in the face of restrictions in Cox's deed which restricted the property to residential use only.

We find no merit in this issue for two reasons: First, the Supreme Court of this State has noted that courts of Tennessee have the power to terminate residential restrictions on property and in appropriate cases may exercise such power. *Land Developers, Inc. v. Maxwell*, 537 S.W.2d 904, 917 (Tenn.1976). We further find no merit to this argument because the restrictions against commercial use of the property expired in 1975 and were not in effect at the time of the taking.

The trial court properly admitted evidence concerning the value of the subject property based upon potential commercial use.

The evidence showed that restrictions were originally placed on the subject property by deed dated 17 April 1947. This 17 April 1947 deed specifically stated that the restrictions against commercial use would expire 1 May 1975. Each deed subsequent to the 17 April 1947 deed merely recited restrictions similar to the 1947 deed. As of the date of taking, 4 October 1989, there were no restrictions on defendant's property through which commercial use was prohibited. Therefore, defendants' experts properly evaluated Cox's property considering its potential for commercial use.

The evidence showed that the Cox property is located on the south side of Nashville Pike within five to six hundred feet from Walmart, Kroger, a shopping center, and the Sovran Bank. Mr. Carmen, who has been in the real estate business in Gallatin for thirty years, testified: "Just about all of [the commercial property] has been taken" to Lock Four Road. Mr. Carmen did not consider residential property located down Lock Four Road comparable to Mrs. Cox's Nashville Pike property.

Mr. Parks stated:

In looking at the properties involved in this appraisal and taking into consideration the activity on Nashville Pike that's been taking place over the last few years, I consider the property to have a commercial potential and for that reason, based upon sales in the area, I appraise the property at $160,000.00.

Mr. Parks, testified that a firm consideration in determining comparable sales was that the comparable sale also must front on Nashville Pike. Mr. Parks considered such location to be strategic and noted that "there has been considerable development [in the area]." He continued:

In the most recent years, from my street way across to Lock Four Road, there has been considerable development. On the south side of Nashville Pike, I have seen homes converted to accounting offices, real estate offices, insurance offices, dental offices. There have been land sales that have—houses that have been removed and improved with more modern commercial type buildings ... just a lot of commercial activity.

Mr. Parks further testified that his office had previously been residential property burdened with restrictions and that he did not consider residential subdivision property to be comparable to Mrs. Cox's property.

Mrs. Cox testified that she moved on the property in 1953. She further stated:

When we moved out there we were in the country. Now it's just all commercial and every kind of commercial you can think of just about. The Bank next door to the property near us. It's just all commercial. Nothing left residential out as far as my property and then it's just plans go further and beyond that down Nashville Pike.

There is ample evidence as to the change in property around property; evidence that the property was now either commercial or had become commercial in recent years. The evidence does not indicate a commercial use of Cox's property to be infeasible or remote in likelihood or time so as to make it improper to consider its commercial use. *State v. Parkes*, 557 S.W.2d at 508. Therefore, the trial court properly admitted

evidence of commercial value. This issue is without merit.

TDOT next argues that "the Trial Court erred in allowing defendant Coxes' expert witnesses to testify as to their respective experience in matters of zoning and rezoning property."

■ Both Mr. Carmen and Mr. Parks were aware of the property's zoning as of the date of taking. They testified that, based on their experience in the real estate business, they were familiar with zoning changes. Mr. Carmen testified that land use and designated zoning were changed quite often. Mr. Parks specifically discussed recent changes in zoning which culminated in the relocation of a car dealership in derogation of the City's land-use plan. Both testified that the Gallatin City Council would probably rezone the property if the defendants requested rezoning. Both witnesses considered zoning changes feasible for the subject property.

TDOT argues that neither Mr. Carmen nor Mr. Parks contacted a single reliable source in order to form the basis of that testimony and that it is contrary to Tenn. R.Evid. 703. TDOT argues that this testimony was speculative and conjectural and that the trial court's allowance of it was prejudicial error.

■ Opinion testimony by experts and testimony regarding underlying facts within the knowledge of the expert witnesses are admissible. There is nothing in this record to indicate a lack of trustworthiness on the part of either of these experts which would require the court to disallow the experts' testimony. This issue is without merit.

TDOT's sixth issue is: "Whether the State of Tennessee as a condemning authority 'has a right to discover the landowner's expert contention prior to preparing for rebuttal and whether this right precludes the award of attorney's fee and sanctions due to the inability of the State to disclose its rebuttal position.' "

TDOT, through its expert witness Ted Clarke, sought to introduce evidence that the City of Gallatin would not approve a zoning change for Cox' property and allow it to be used for commercial purposes. Mr. Clarke specifically testified that a land use development policy adopted subsequent to the date of taking called for continuation of the property's then present R–20 zoning. Mr. Clarke testified that the purpose of the plan was to protect existing residential areas or maintain the areas' integrity. Mr. Clarke admitted on cross-examination that permission for commercial use of parcels within the area designated by the plan for continued residential use had been applied for and was under contemplation by the City Council of Gallatin.

In rebuttal, Cox called as witnesses property owners who lived within Woodlawn Estate Subdivision. The tenor of their collective testimony was that they would not object to a change in zoning of their respective properties to permit commercial use.

■ Defendants' rebuttal was proper in that it repelled and disputed TDOT's contention that any change in the present use of the property would be unlikely. We disagree with TDOT that Cox's rebuttal afforded her "two bites at the apple." This issue is without merit.

TDOT's seventh issue is: "Whether the sanctions were warranted and justified a valid award of attorney's fees against the State," and "whether sanctions, including an award of attorney's fees, are warranted under T[enn].R.C[iv].P. 16(e)."

On 8 March 1990, the trial court issued a notice and order of pre-trial conference. This notice provided, in relevant part: "Counsel . . . will prepare a pre-trial memorandum no later than five (5) days prior to the pre-trial conference" and serve a copy of the pre-trial memorandum upon adversary counsel. Counsel for each of the parties was to prepare a list of witnesses and the comparable sales to be relied upon if the witness was a land expert. These lists were to be exchanged on the pre-trial date in open court. This notice and order of pre-trial conference expressly stated it was pursuant to Tenn.R.Civ.P. 16. The pre-trial conference was to be held on 4 May 1990.

Trial counsel for TDOT became counsel of record on 1 May 1990. Counsel stated that, upon investigation, it was determined that TDOT was unable to submit a list of expert witnesses and comparable sales because none of its consultants/appraisers had completed an appraisal and the landowner had not provided any information which indicated what he/she "might have wanted to rebut." TDOT further argues that its counsel appeared "at the pre-trial conference and stated that after a good faith attempt it could not comply with the court's notice and order of pre-trial conference."

The trial court's notice and order of pre-trial conference, which was filed on 8 March 1990, required that both parties submit a pre-trial memorandum no later than five days prior to the scheduled 4 May 1990 conference. The relevant part of the trial court's order required that each party include in the memorandum: "a list of witnesses of each party and the comparable sales to be relied upon if the witness is a land expert (These lists shall be exchanged on the pre-trial date in open court)."

The information was to be furnished to the trial court no later than 27 April 1990. The defendant landowner filed her pre-trial memorandum on 27 April 1990. TDOT did not file a memorandum with the court. At the 4 May pre-trial conference, the trial court extended the deadline for providing the information to 7 May 1990. In the order extending the deadline, the court stated: "Petitioner shall provide unto the Court and counsel for defendant by May 7, 1990 a list of its expert witnesses expected to testify in this matter, the comparable sales relied upon in making said expert appraisal, and the value assigned subject property by said expert appraisers."

When TDOT did not produce the information by the extended deadline, Cox filed a motion for sanctions. She asked the trial court to impose:

suitable sanctions against the Petitioner State of Tennessee, the said State of Tennessee having failed and refused to provide counsel for defendant with the following information: "Names of the expert witnesses it intends to call as to value of the subject property, the value each expert appraiser has assigned to the subject property, along with comparable sales used to arrive at said appraisal."

TDOT argues that its tardiness in complying with the trial court's order was because of its inability to generate appraisal information and name its valuation experts due to the "surprise" discovery of restrictive covenants in defendant's title. TDOT couples this with its perceived necessity of retaining an appraiser to replace an expert witness originally hired by TDOT.

Cox argues that neither explanation presented by TDOT constitutes a valid excuse for not providing the court ordered information under the facts presented. We agree.

TDOT argues that it was not given adequate time within which to comply with the trial judge's order to produce the names of its expert witnesses. A condemnation action is set in motion by the filing of a petition for condemnation or a like-styled document by the authority seeking to exercise its power of eminent domain. The condemnor is, from the outset, in the best position to determine the course of subsequent proceedings because the condemnor controls the initial filing of the action. Having once initiated the action, a condemnor must then be prepared to proceed with the case.

In this cause TDOT filed its petition for condemnation on 14 September 1989. Cox filed her exceptions to the amount deposited 20 September 1989 and expressly waived the provision of Tennessee Code Annotated Section 29–17–1201 by filing a waiver to that effect on 4 October 1989. An agreed order to set the case was entered on 4 October 1989, and the matter was scheduled to be heard 8 June 1990. The parties, by signing and filing the agreed order, committed themselves to a limited window of discovery, and the court was aware of this limited window.

TDOT argues that it perceived no necessity warranting the introduction of rebuttal testimony as to value of, and exceptions to,

the deposit. Counsel for TDOT also suggests that the "discovery" of residential restrictions in Cox's chain of title frustrated its expert's ability to timely produce an appraisal based on the property's fair market value. TDOT insists that it discovered restrictions which TDOT construed to change the value of defendant's property on the appeal of the case of *State v. Williams.* The *State v. Williams* case was tried before a jury from 11 May through 14 May 1990. The pre-trial memoranda containing information from the respective appraisers were due 27 April 1990.

■ TDOT's argument that it was unaware of restrictions to defendant's deed ignores long established Tennessee law. A purchaser of land is charged with notice as to recital of the deeds in the chain of title and of every fact which, with reasonable prudence or diligence, he ought to become acquainted. *Teague v. Sowder,* 121 Tenn. 132, 150–151, 114 S.W. 484, 489 (1908).

■ TDOT's relationship as condemnor to defendant is analogous to that of a purchaser. Furthermore, in the present matter, Cox's deed specifically recites the restrictions TDOT claims to have discovered months after the condemnation was initiated. TDOT refers to defendant's deed as the source of title in the description attached to its petition. TDOT is charged with actual notice of the aforementioned restrictions from the date of the filing of its petition for condemnation, 14 September 1989. This issue is without merit.

By its eighth issue, TDOT contends that "the trial court erred in ordering TDOT to pay the expenses of defendant in obtaining an order invoking sanctions against the State of Tennessee for failure to comply with the Court's pre-trial discovery order."

■ Judge Highers, in writing for the Court in *State v. Lehman,* (Tenn.App. at Nashville, filed 2 August 1991) slip op. at 7–8, 1991 WL 142879, addressed this issue as follows:

The awarding of sanctions is provided for in Rule 37.02 of the Tennessee Rules of Civil Procedure which reads as follows:

If a ... party fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just.

.    .    .    .    .

[T]he court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

The State is a party to this action and the State failed to obey an order of the court permitting discovery. The trial court did not find that the State's failure to obey the order was justified, and we agree. The State asserts that it was unable to comply with the court's order because it did not discover the restrictive covenants in the chain of title to defendant's property until the last moment before the pre-trial memorandums were due. However, because the restrictions are clearly noted in defendant's deed which was on file, the State had constructive notice of the restrictions and cannot use late discovery of the same as an excuse for failing to obey the court's order.

Every court is vested with the power to punish for contempt. *See* T.C.A. § 16–1–103. The court is vested with the power to punish for contempt those parties who willfully disobey an order of the court. *See* T.C.A. § 29–9–102(3). The State was aware of the deadline for the filing of pre-trial memorandums and the court graciously extended the deadline for the State. The State indicated that it would obey the order within the extended deadline and failed to do so. The evidence preponderates in favor of the court's finding that the State was in contempt and we affirm the award of sanctions.

*The facts in the instant case are identical to the facts in State v. Lehman and, for the reasons set out in State v. Lehman, the trial court properly sanctioned TDOT.*

"On appeal, the exercise of discretion by a trial court in imposing sanctions will not be disturbed in the absence of an affirmative showing of abuse." *Brooks v. United Uniform Co.*, 682 S.W.2d 913, 915 (Tenn. 1984).

This issue is without merit.

We have considered each of the remaining issues presented by TDOT and find them to be without merit.

Each of the issues raised by the Tennessee Department of Transportation is without merit and is therefore overruled.

The judgment of the trial court is in all things affirmed and this cause is remanded to the trial court for the enforcement of its judgment and for any further necessary proceedings.

TOMLIN and CRAWFORD, JJ., concur.

## ORDER

The appellant, State of Tennessee, Department of Transportation, has filed its motion pursuant to Tennessee Rule of Appellate Procedure 22 seeking to have this Court reconsider, revise and reissue the opinion heretofore filed in this case and specifically to have the Court delete its footnote 2 which states: "It seems that the State went to trial in the trial court not prepared...."

The Court fully considered the entire record in this case in arriving at its conclusion that the State was not prepared in the trial court.

We have again re-examined the record, including Judge Goodall's affidavit, and remain of the opinion that there was inadequate preparation prior to the trial of this matter in the trial court.

It is therefore ORDERED that the "Motion to Reconsider, Revise and Reissue Opinion" is denied at the cost of the appellant.