IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

September 30, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

EVA L. MILES                    )         JEFFERSON COUNTY
                                )         03A01-9711-CH-00500
        Plaintiff-Appellant     )
                                )
                                )
        v.                      )         HON. C. S. RAINWATER, JR.,
                                )         CHANCELLOR
                                )
                                )
MARJORIE M. NELSON              )
                                )
        Defendant-Appellee      )         AFFIRMED AND REMANDED


WILLIAM A. ZIERER OF MORRISTOWN FOR APPELLANT

JAMES D. HUTCHINS OF DANDRIDGE FOR APPELLEE


O P I N I O N


                                                Goddard, P.J.


        In this case Plaintiff Eva L. Miles sues Defendant Marjorie M. Nelson to have

decreed to her a triangular strip of land which is not encompassed in the deed to her and her

husband.  It is, however, included in the deed to Mrs. Nelson and her husband.  The Plaintiff

asserts that because she has adversely possessed the disputed area for a period of almost 39 years,

she is entitled to prevail.


        The Trial Court found that the Plaintiff did not prove her claim by clear and

positive proof and, consequently, dismissed her suit.

Her appeal insists that the evidence preponderates against the Trial Court's determination that she did not meet her burden of proof.

The parties own adjoining lots in the Cherokee Lakes Subdivision in Jefferson County. The Plaintiff owns Lot 9 and the Defendant owns lot 10. The descriptions in the deeds to both lots refer to a recorded plat and also describes the lots by metes and bounds which, as to the length of all lot lines and as to the calls as to the front and rear lines, is in conformity with the recorded plat.[1] The Plaintiff and her husband acquired her property from the developer of the subdivision by deed dated August 13, 1958, and the Plaintiff succeeded to the ownership of the property upon the death of her husband. The Defendant and her husband acquired the property by deed dated December 27, 1967, and she also succeeded to the ownership upon the death of her husband.

Apparently the parties lived side by side in harmony from the date the Nelsons purchased the property until May 1997, when, because of the illness of the Defendant, her daughter and her son-in-law decided to move into the basement of her house so that they might be in a position to better care for her and see after her needs. Incident to this planned move they decided to construct a driveway on the property to serve the basement apartment. When a survey was made of the Defendant's property, it was discovered that a triangular strip of land fronting approximately 5.8 feet on the road and extending back some 160 feet was in fact a part of lot 10, although both the Plaintiff and the Defendant had always thought it was a part of lot 9.

The Defendant and her husband through the years evidenced ownership of the area in question by planting flowers, shrubs and trees, both fruit and flowering. They had mowed the area, placed their mailbox on it, and dug a drainage ditch near the road. Mr. Miles had also cut a tree which was on the boundary line of the property the Plaintiff claims. The restrictions as

---

[1] The plat does not show the calls for the side lot lines.

to the subdivision prevented lot owners from erecting a fence higher than two feet, but no fence was ever erected by the Mileses. During their ownership, the Mileses had never prevented anyone from crossing the property in dispute.

As already noted, the Trial Court found that the above facts of ownership shown, which were undisputed, did not meet the requirements for adverse possession.

The Chancellor was correct in finding the Plaintiff bore the burden of proving by clear and positive proof, McCammon v. Meredith, 830 S.W.2d 577 (Tenn.App.1991); Tidwell v. Van Deventer, 686 S.W.2d 899 (Tenn.App.1984), that she met the requirements necessary to establish title by adverse possession.[2] These requirements are set out in Catlett v. Whaley, 731 S.W.2d 544, 546 (Tenn.App.1987), a recent opinion of this Court, as follows:

> To establish title by adverse possession, there must be an occupation of the property under a claim of right or title which is open, actual, continuous, exclusive, adverse and notorious for the prescriptive period of 20 years. Tidwell v. Van Deventer, 686 S.W.2d 899 (Tenn.App.1984); Smith v. Adkison, 622 S.W.2d 545 (Tenn.App.1981); and Preston v. Smith, 41 Tenn.App. 222, 293 S.W.2d 51 (1955).
>
> The nature and character of the land is taken into consideration in determining whether the claimant's possession has been sufficient to establish ownership. (Citations omitted.)

Our research has disclosed cases which hold that as to mountain land and the like, Panter v. Miller, 698 S.W.2d 634 (Tenn.App.1985), or where the erecting of a fence would destroy the principal utility of a particular piece of property, Lamons v. Mathes, 33 Tenn.App. 609, 232 S.W.2d 558 (1950), a fence is not required.

---

[2]     The case of Hanes v. Peck's Lessee, 8 Tenn. 227 (1827), is one of the first Tennessee cases to enunciate the rule of "presuming a loss grant" (which is the predecessor of presuming a lost deed) by possessing property adversely for a period of 20 years.

3

Beginning as early as 1878, in Pullen v. Hopkins, 69 Tenn. 741 (1878), our

Supreme Court, when addressing adverse possession as it relates to our color of title defensive

statute states the general rule, notes exceptions, and concludes that the general rule requiring

enclosure should not be extended (at page 744):

> It is generally recognized as the law in this State that actual possession for seven years is necessary to give the younger grantee the better title under our act of 1819, and actual possession is generally understood to mean an enclosure by building fences, or other similar improvements. This goes upon the theory that the possession must be continuous, and open, and notorious; that is, by such acts of possession as give notice to the public that the party is holding possession under a claim of title, and in general nothing short of actual enclosure will be regarded as sufficient evidence of the continuous occupation of the land as to give notice to the public of the adverse holding. See the subject discussed in Angell on Lim., sec. 396. Some exceptions have been made to this rule, and the extent to which these exceptions have gone, or ought to go, is the question now presented.
>
> In West v. Lanier, 9 Hum., 762, it appeared that the land was only valuable for the timber and iron ore upon it, and Lanier placed slaves upon the land who cut timber and removed iron ore therefrom from time to time to supply a factory near by, but did not reside upon the land, build houses for the slaves, or make any enclosures; his possession, however, we held equivalent to actual possession. The court adopted the language used in Ewing v. Burnett, 11 Peters, as follows: "An entry by one man upon the land of another is an ouster of the legal possession arising from the title or not, according to the intention with which it is done. If made under claim or color of right, it is an ouster; otherwise, it is a mere trespass. In legal language, the intention guides the entry and fixes its character." Again, "neither actual cultivation or residence is necessary to constitute actual possession when the property is so situated as not to admit of any permanent useful improvement, and the continued claim of the party has been evidenced by public acts of ownership such as he would exercise over property he claimed in his own right, and would not claim over property he did not claim." In that case the possession consisted of digging and removing sand from a lot in Cincinnati, and it was held sufficient, the lot not being susceptible of any useful permanent improvement.
>
> The court uses approvingly the language of Judge Gaston in Williams v. Buchanan, 1 Ire. L. R., 540: "Possession of land is denoted by the exercise of acts of dominion over it, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, and not of an occasional trespasser." The possession in that case was of a fish trap and dam in a sluice of an unnavigable stream, and having been continuous, was held sufficient. Judge Green concludes, "From these cases it will be seen that an inclosure or residence on land is not necessary in order to constitute possession, but that such use and occupation of it as from its nature and character is susceptible under a claim of ownership, will be an actual possession."

4

In the case of Cass v. Richardson, 2 Col., 28, it was held that the erection and use of a wash place to wash iron ore was not sufficient, the court saying that in general a building or inclosure of some sort is necessary, but that exceptions existed where the land is unfitted for residence or cultivation as, for example, an ore bank, a coal ravine, a sand pit, a stone quarry, or a meadow below tide water.

The case of Copeland v. Murphey, 2 Col., 64, seems to carry the principle still farther, as in that case, although it was said that the timber constituted the principal source of value of the land, it did not appear that it was not susceptible of cultivation. However, in that case, although the continued cutting and using of the timber in the sight and hearing of the plaintiff was a strong consideration, yet it further appeared that the defendant claimed the land under a lost deed, and had the line surveyed and run out when the plaintiff was along, and it was apparent that the latter was fully informed that the land was being claimed and held by the defendant as part of his home tract of land upon which he lived.

Cases may arise where the acts of domain and ownership over unimproved lands may be of such a character as to leave no doubt of the party's claim of ownership, although the land be susceptible of inclosure or cultivation, and in such case the claim of possession, it would seem, ought to be recognized. But in general, the rule that the possession must be by inclosure, if the land be susceptible of it, is so well understood and recognized that it is better not to depart from it. Whatever may have been the rule as to an ouster of the possession which attaches to the legal title, such as would have authorized ejectment by the true owner, yet it is generally conceded that under our statute of limitations the possession must be at the time continuous and actual to perfect an inferior title, and ordinarily the use of timber from uninclosed land is not sufficient, as such acts are not regarded as giving notice to the public of the party's possession and claim.

The exception, as stated, is where the other acts of possession have been such as the land is susceptible of from its nature and character. The ore bank, the sand bank, the fish trap, the stone quarry and coal ravine, have been instanced. Will it do to establish the rule that the use of timber will amount to actual possession in all cases where the land, or the greater part of it, is not fertile or level enough to be profitably cultivated in the present state of population? For this is what the defendant's testimony amounts to, although he uses the language used by the court in the case of Ewing v. Burnett, that the land is not susceptible of any useful permanent improvement. Yet from his description and the facts stated, we see simply that at present it would not be profitable to cultivate a large portion of this land, but how it may be when the country becomes more densely populated we can not say. He concedes that part of it may be cultivated, and a small part in fact has since been inclosed. His testimony does not show absolutely that the land is not susceptible of cultivation or residence.

If this rule be established it would introduce in a great number of cases the question whether the land or the greater part of it, be valuable enough to clear and cultivate; if not, then it would be claimed that the use of timber would be sufficient evidence of possession; but if suitable land to cultivate, then a different rule of possession would prevail. This would introduce a rule of uncertainty, and one that practicably it would be difficult to follow, whereas the other rule is generally understood, and of easy application, and we think it better to exend the exceptions to the rule requiring actual inclosure no farther. See 2 Smith, L. cases, 6 Am. Ed., Marg., p. 561, *et seq.*

We conclude that the possession in this case was not of a character to give the defendant the better title, and the judgment will be affirmed.

In the present case the Plaintiff insists that shrubbery planted along the line she claims near the front of the tract served to meet the requirement of a fence. One of the photographs introduced, exhibit four, would, at the angle it was taken, seem to support her contention. However, her own surveyor testified that the shrubbery was not a hedge and not restrictive.

Upon our <u>de novo</u> review of the record we conclude the evidence does not preponderate against the Trial Court's findings that the Plaintiff has not borne the burden required when asserting ownership by adverse possession.

In reaching the foregoing conclusion, we are not unmindful of the case of <u>Hallmark v. Tidwell</u>, 849 S.W.2d 787 (Tenn.App.1992). In that case it appears that the plaintiff and her husband had cleared property not included in their deed and "fenced a part of the non-owned cleared property and created a garden on the remainder." The issue on appeal as to this case, however, was not whether the plaintiff's possession was sufficiently adverse, but whether Mrs. Hallmark was required to show that the non-possessory holder of the legal title was not "under any disability at any time during the period of adverse possession."

In conclusion, we have not overlooked the alternative relief sought in the Plaintiff's brief, to-wit, that she was entitled "to a perpetual exclusive prescriptive easement for all encompassing surface uses, such as planting, gardening, mowing, leisure activities, etc." This is a theory that was not advanced below and cannot be considered for the first time on appeal. <u>Simpson v. Frontier Community Credit Union</u>, 810 S.W.2d 147 (Tenn.1991); <u>Brookside Mills, Inc. v. Moulton</u>, 55 Tenn.App. 643, 404 S.W.2d 258 (1965).

6

One additional matter needs to be considered. It appears that a stay order was entered by this Court pending disposition of this appeal, and thereafter a motion for contempt was filed by the Plaintiff for acts committed by an agent of the Defendant affecting the disputed strip of land. Because it is necessary that proof be introduced as to this issue, upon remand it is appropriate for the Trial Court to address the issues raised by the Plaintiff's motion in respect thereto.

Finally, in order to maintain the status quo, the stay heretofore issued will remain in effect until our judgment becomes final or an application for appeal is accepted by the Supreme Court and the propriety of the stay resolved by it.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for such further proceedings, including disposition of the motion for contempt, as may be necessary. Costs of appeal are adjudged against the Plaintiff and her surety.

_____
Houston M. Goddard, P.J.

CONCUR:


_____
Don T. McMurray, J.


_____
Charles D. Susano, Jr., J.