IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 14, 2010 Session

IN THE MATTER OF: LILLIAN M, DOB 08/08/06, A Minor Child Under
the Age of Eighteen (18) Years Old, STATE OF TENNESSEE,
DEPARTMENT OF CHILDREN'S SERVICES, v. TM and CM

Appeal from the Juvenile Court for Hawkins County
No. HJ-08-673     Hon. James F. Taylor, Judge

No. E2010-00749-COA-R3-JV - Filed January 31, 2011

In this action, the Trial Court ordered the Department of Children's Services which had custody of the minor child, to furnish the parents with medical information, including video tapes. A written response was not made by the Department and the video tapes were not obtained and furnished to the parents. The Trial Court held the Department in willful contempt of the Court and entered sanctions as punishment. The Department has appealed. We hold that the record does not establish a basis to hold the Department in willful contempt of Court and we reverse the Trial Court's contempt judgment.

Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Reversed.

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and JOHN W. MCCLARTY, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, and Lindsey O. Appiah, Assistant Attorney General, Nashville, Tennessee, for the appellant, State of Tennessee Department of Children's Services.

William E. Phillips, II., Rogersville, Tennessee, for the appellees, TM and CM.

# OPINION

## Background

The Department of Children's Services (DCS), filed a Petition for Temporary Custody against respondents, TM and CM, alleging their children were dependent and neglected. DCS alleged that the child Lillian M had suffered weight loss which instigated the referral, and that she was suffering from nutritional and medical neglect. Further, that when Lillian was admitted to the hospital she began to gain weight, but the mother tried to remove her from the hospital against the doctors' orders, and that the children were in danger of harm in the mother's care.

The Trial Court entered a protective custody order and appointed a guardian ad litem for the children. The Court entered an interim order placing Lillian in the custody of DCS and allowed for visitation with the parents to be supervised by DCS. The parents were ordered to undergo a parenting assessment with psychological component, and to follow all recommendations from the assessment.

On July 29, 2008, the Trial Judge entered an order in this matter pursuant to an oral motion by the parents' counsel, that the parents' attempt to acquire medical records of the daughter, Lillian, had been thwarted on the ground that medical providers refused to provide the records because DCS had advised them not to provide the records. The Trial Court ordered "all treating physicians and other medical providers are directed to comply as expeditiously as possible with any and all request for medical records regarding Lillian . . . received from parents' counsel . . . . The Department shall inform all medical providers that were previously directed to deny the parents' request for Lillian's medical records that the parents and their counsel are entitled to said records".

Subsequently, in the record before us, the guardian ad litem, and CASA for Kids Incorporated, jointly requested an extension of their appointments for 60 days and charged in the joint motion that the parents of the minor child had requested that a GI tube be surgically implanted in Lillian M to assist with her feeding. Further, that the guardian ad litem and CASA "have not been able to access the medical records for the child. It has just come to our attention that counsel for the [parents] has instructed the primary physician not to provide any records". The Court reappointed CASA and the guardian to investigate and granted them power to assess the children's records.

Subsequently, the children's grandparents filed a motion to alter or amend, and alternative motion to strike, seeking to be allowed to participate in the trial. In response, the Trial Court entered an order allowing the grandparents to intervene at the disposition phase

of the proceedings. The Court also ordered that DCS was to make a request to the children's hospital for the surveillance tape that was made during the child's stay in the hospital, and if the hospital would not provide the same, DCS was to request a written statement to that effect from the hospital.

Respondents then filed a motion for contempt alleging that the Department "wilfully refused to comply with this Court's orders, and have consistently thwarted and otherwise hindered respondents' attempts at discovery."

Respondents allege that they asked the State for the video tapes, and that DCS had not complied with the Court's order and they asked the Court to dismiss the State's position as a sanction under Tenn. R. Civ. P. 37.02 and to be awarded attorney's fees.

The Trial Court entered an order finding that DCS had failed to comply with the Court's order and that the failure was willful. The Court held that DCS was in contempt, and ordered that its petition for custody be dismissed and that the children would be returned to their parents. The Department of Children's Services appealed and the sole issue raised on appeal is whether the Juvenile Court erred in finding that DCS was in contempt for failure to comply with a discovery order.

DCS argues the Juvenile Court lacked authority to hold the State in contempt, but contrary to DCS's argument there are prior cases wherein the State has been held in contempt for failure to abide by a court's order. *See, State of Tennessee, ex rel. Commissioner, Department of Transportation v. Cox*, 840 S.W.2d 357 (Tenn. Ct. App. 1991); *State of Tennessee, ex rel Commission, Department of Transportation v. Lehman*, 1991 WL 142879 (Tenn. Ct. App. Aug. 2, 1991). In these cases, the TDOT failed to comply with the trial court's scheduling order and failed to file a pre-trial memorandum and other required information, including expert witness information, with the trial court by the court's deadline. The court found the State of Tennessee willfully refused to comply with the court's order and found this was an abuse of the discovery process and constituted contempt of court. *Id.* We find the State's argument without merit, however, the determinative issue is whether or not the evidence establishes a basis to find the Department in contempt of court.

Most of the contempt hearing involved statements by the attorneys and comments by the Court. The Court, in comments to the Department's attorney at the hearing stated "I am concerned about the Department's position after the order of the Court, that it [videotapes] would be produced. The position that it would not be produced, and it was not the Department's obligation to produce it. And I think that's the particular basis for contempt . . . ." The attorney responded, "Well, your Honor, I have always argued that the Department did not have custody of the tape, video tape, has never had custody of the video tape, and has

made efforts to locate the tape, or get the hospital to say that they destroyed the tape, and have been unsuccessful in that. So we've tried everything we know to do." The Court then asked counsel, "[a]re you making an offer of proof that there be a particular witness of the Department who would say, 'We have made this effort'." Counsel responded, "Yes." The Department then offered the testimony of Donna Spencer. The Court then elicited testimony from Ms. Spencer, as follows:

THE COURT: Alright. Thank you. Ms. Spencer, tell me about the efforts that you've made since July to obtain this video tape?

MS. SPENCER: I was informed by Mr. Freemon that I needed to contact Children's. I contacted Children's, I spoke with medical records. I was told that I needed to speak with them in regards to that requesting if it had been destroyed, which I was told at the time in May of '08 that it had been destroyed, that there was nothing on the tape. I had never been in possession of any tape, any video tape, DVD, was never given anything, was never shown anything, Your Honor.

THE COURT: And what has been handed by Ms. Spencer is a letter from the Department to the hospital, I guess, requesting the tape. Is that correct?

MS. SPENCER: Yes, Sir.

THE COURT: And they gave you the verbal, basically the verbal response that you just recited in your Testimony?

MS. SPENCER: Yes, Sir.

THE COURT: Has the Department since then put that in writing and filed it with the Court?

MS. SPENCER: You[sic] Honor, I do not believe that has occurred. If you do wish that, then I can have that done today.

. . .

THE COURT: It's dated July 13th, and it appears to be the original, you know, document. Was it faxed over?

-4-

MS. SPENCER:     It was faxed to Children's.

MR. PHILLIPS:     Is there a receipt for the fax?

MS. SPENCER:     When I faxed it?  I don't, I can't keep fax covers in my, I am sorry, no, I do not have the fax cover sheet where it went to them.

MR. PHILLIPS:     Not the cover sheet, Your Honor, but . . .

MS. SPENCER:     Do you mean the response back?

MR. PHILLIPS:     Yes.

THE COURT:     The fax confirmation?

MR. PHILLIPS:     The fax confirmation, thank you.

MS. SPENCER:     I do not.

The foregoing is the only witness testimony in the transcript.

The Court then found the Department in willful contempt of court from the Court's Order in July to the effect that the Department either produce the tape, request the tape from the hospital, and file a written response to the Court's Order.

The only testimony in the contempt hearing is that the Department's witness did attempt to comply with the Order of the Court as the foregoing testimony reflects.  However, the Department's counsel admitted to the Court that a written response as ordered by the Court was not filed with the Court.  It is not clear from the record why a written response was not filed as directed.  The evidence does not establish whether or not Donna Spencer communicated the information detailed in her testimony to the Department's counsel, and the Court's conclusion that the failure to file a report was willful, was not established by the evidence. Essentially, the gravamen of the contempt complaint i.e., the Department willfully refused to make available the video in the dispute, has not been established.  The testimony in the record establishes that the hospital advised the Department's agent that the video had been destroyed and was not available.  The evidence sets forth the defense that the Department could not obtain the video, in compliance with the Court's Order.  We hold that the evidence negates a basis to hold the Department in willful contempt.

The appellees argue that the issue of contempt was separate and apart from the sanctions imposed by the Trial Court. The appellees' brief observed "as such, the Department's apparent argument that Juvenile Court exceeded its authority under contempt statutes is misplaced, as the Court did not employ such statutes and no punishment or sanction was issued based upon the finding of contempt. The Juvenile Court's finding of contempt was an innocuous one and amounted to nothing more than a verbal censure".

We do not agree. The Trial Court's finding of contempt formed the basis for the penalty issued by the Court. When a contempt conviction is reversed, the punishments and/or sanctions based upon that conviction are nullified.

In sum, we hold that the evidence does not establish a basis for holding the Department in willful contempt of court. The contempt judgment is reversed.

In our discretion we tax one-half of the cost of the appeal to the Department, and one-half to the parents.

_____
HERSCHEL PICKENS FRANKS, P.J.